W. F. Creighton and A. D. Creighton, Trustees, etc.

*v.*

Mrs. Margaret Creighton Hayes et al.

354 S. W. 2d 73.

(*Nashville,* December Term, 1961.)

Opinion filed February 8, 1961.

William P. Cooper, Hofstetter & Hofstetter, Nashville, for appellants.

Phillips, Gullett & Steele, Nashville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This suit presents three basic propositions to be determined under the factual situation herein presented, to-wit: (1) can a Trustee individually acquire by purchase the interest of a beneficiary in the trust; (2) is it necessary to make the issue of five living *sui juris* beneficiaries of the trust parties to a proceeding which is filed for the purpose of approving the accounts of the Trustee; and (3) will a bill lie which seeks merely a declaration of future rights and to determine contingencies which may never arise or which purely present questions which are abstract, theoretical and hypothetical?

Mr. Robert T. Creighton died in Nashville, Davidson County, Tennessee, on November 12, 1926, and his will was offered for probate a few days thereafter. Insofar as this litigation is concerned Item III of this will is the only portion that is of interest herein. Item III is, as follows:

## "III.

"All the stock in the Foster & Creighton Company, a Tennessee corporation, of which I die seized and possess, I bequeath to my sons, W. F. Creighton and A. D. Creighton, as Trustees, to hold, for the benefit of my aforesaid five children, or, in case any of them be dead, their issue per stirpes, for the life of said Trustee last surviving. The said Trustees, or in case of the death of one, then the survivor, shall have the power to vote said stock at all meetings of said Company, shall divide the cash dividends received thereon equally between my aforesaid five children or the issue, per stirpes, of any that may be dead. Stock dividends shall be held and retained by said Trustees. The said Trustees, or the survivor, if one should die, shall have the right, in their or his sole discretion, to sell said stock for cash at any time they or he may desire and, in such event, the said trust shall terminate and the proceeds shall be divided equally among my said five children or the issue of any that may be dead, per stirpes. The said Trustees shall not be required to give bond."

Mr. Creighton left surviving him five children, who at the time of the filing of this lawsuit were all living and *sui juris* except one. In December of 1927, one of these five children, Robert William Creighton, sold to his two brothers, the two Trustees, his one-fifth beneficial interest in the trust estate, being administered by them, for the sum of $5,800.00, which was paid by them to him in cash. This sale consisted of 290 shares of the Creighton Company stock. Sometime shortly after this sale which was an oral sale from one brother to the two

Trustees, as individuals, these two brothers who had bought Robert's interest sold a portion thereof to a brother-in-law. There was no written memorialization of said sale other than the check or checks evidencing the payment of the purchase price. From the date of the sale in 1927 up until January, 1948, no action, if there. was any complaint, had been taken in reference to this sale from one brother to his other two brothers as individuals, who were likewise Trustees.

On January 14, 1948, or approximately twenty-one years after the sale of Robert Creighton to his two brothers apparently because there was some talk or discussion of whether or not the sale was valid in view of the fact that the stock in this period of time had increased greatly in value and paid large dividends, and to save any question as to whether or not this sale was good there was a release and quitclaim deed executed by the said Robert W. Creighton and his three children. At the end of this quitclaim deed which was acknowledged for the purpose of registration, Robert Creighton wrote on the bottom thereof:

"I sold to W. F. Creighton & A. D. Creighton my share in the 290 shares of Foster & Creighton Co. stock mentioned in his will and referred to in this instrument.

"R. W. Creighton
Feby. — 19 — 1948"

From the time of execution of this instrument up until the time the present bill was filed in July, 1960, there was apparently nothing done about the matter, at least nothing was done so far as action being taken in

court. After the execution of this instrument Robert William Creighton died in 1953. During all this time from the sale of this stock in 1927 up until the time this bill was filed, the Trustees paid to themselves individually and to others mentioned in the clause of the will above quoted, and to their brother-in-law who bought from them part of this 290 shares, cash dividends received by them which were distributable on account of the Robert William Creighton interest in the trust which they had purchased. Between that time and the time the present bill was filed Mr. Dunbar, the brother-in-law, apparently died and his interest was properly distributed.

Shortly before the bill in this case was filed, the Trustees had learned that the appellants, Mrs. Mary Creighton O'Callaghan and Mrs. Frances Creighton Fennell, two of the children of R. W. Creighton, deceased (the one child who sold his interest), might make some claim that they had some right in the cash dividends which had been paid to these Trustees individually and to Mr. Dunbar, or his estate, growing out of the 290 shares which their father had sold. Thus it was that this suit was brought by the Trustees making the above named appellants party-defendants along with their brother and the Trustees' brothers and sisters, who were beneficiaries under the provisions of the will hereinbefore copied. This suit asked that the Trustees be permitted to make a report and an accounting of their administration of the trust estate from the commencement thereof up until the present time; that their report and accounting be in all things confirmed, approved and ratified by the court; that they be allowed all proper credits; and that the court approve, confirm and ratify

all the acts of the petitioners as reported as being in accordance with the terms and provisions of the trust being administered by them.

To this suit various demurrers were filed which upon being overruled, the case was answered and a cross-bill filed. To this cross-bill demurrers were filed. To the action of the Chancellor throughout there were various and sundry petitions to rehear, and suffice it to say without listing each of these various pleadings, etc., in their order, the questions set out in the outset of this opinion are presented herein. The Chancellor held that the sale by the brother to his brothers as individuals was valid and that the appellants had no rights herein and all necessary parties had been made parties to this suit. After hearing argument, reading very able briefs, making an independent investigation of the matter, we now have the questions for determination.

The appellants (daughters of R. W. Creighton, deceased) pitched their contention as to the first proposition presented, that is, whether or not a Trustee may acquire individually the shares of beneficiaries of a trust, on the statement of Cooper, Justice, in *Cannon v. Apperson*, 82 Tenn. 553, at page 579, which statement has been expressly approved by this Court many, many times, and particularly in *Cowan v. Hamilton Nat Bank*, 177 Tenn. 94, 115, 146 S.W.2d 359, 367, to-wit:

"No principle is better settled, or founded upon a sounder basis of legal ethics and positive law, than the principle which declares that whoever undertakes to act for another in any matter shall not, in the same matter, act for himself, and this without regard to the fact whether he has or has not made a profit by the

act. Equity disallows the measure without reference to advantages of unfairness, and treats it as a breach of trust, charging the trustee accordingly: *Perkins v. McGavock,* 3, Hayw. (4 Tenn.), 265. The authorities are uniform to this effect.''

They also rely on the maxim as laid 'down by Chancellor Gibson that: ''No man bound to act for another in any matter can, as to that matter, act for himself''; and on the recent case of *Gillespie v. Branham,* 47 Tenn,App. 234, 337 S.W.2d 689, wherein very learned quotations were quoted from Judge Cardozo in a New York case and Judge Caruthers in *Tisdale v. Tisdale,* 34 Tenn. 596. All of these authorities and the reasoning embody the same principle as that quoted from Judge Cooper, above. There are literally thousands of cases probably from every jurisdiction in the United States holding to this same very sound legal principle, which prohibit the purchase of trust property by the Trustee, not on the basis that they depend upon fraud but to avoid the possibility of fraud, and the idea that a Trustee must not put himself in a position where his private profit will oppose the interest of the estate.

This very sound principle though is subject to numerous exceptions, one of which is set forth in the Court of Appeals' opinion in *American Bank & Trust Co. v. Lebanon Bank & Trust Co.,* 28 Tenn.App. 618, 192 S.W.2d 245, and is the case upon which the Chancellor pitched his conclusion. In that case many of our older cases as far back as 11 Tenn. are cited for the proposition that there are exceptions to this rule. In this case, *Hadley v. Latimer,* 11 Tenn. 537, the opinion was written in 1832, and quotes from Jeremy's E.Ju., 393, as follows:

"Where the *cestui que trust* is capable of taking a part in the transaction, the trustee may make a bargain with him, or purchase under his authority, or with his sanction."

This Court then, a hundred and thirty years ago, went on to approve this exception to the rule and stated though that the courts will watch transactions of the kind with jealousy, but however jealous the court may be when it finds that the relationship established was done fairly and aboveboard it will not set aside the acts of the parties. This exception and principle is brought down as the law to this day, as will be found annunciated in Bogert on Trusts and Trustees, Vol. 1A, sec. 188, page 192, thus:

"In the absence of provisions in the trust instrument or statutes to the contrary, the cestui que trust may alienate his interest as freely as he might a legal estate or interest."

To this statement we found a page and a half of authorities from all over the country which support the proposition. The same proposition as that quoted from Bogert above will be found in 90 C.J.S. Trusts sec. 304, page 477, to this effect:

"There is no substantive rule of law to prevent the trustee from purchasing the interests of the cestuis que trust from them, if he can show the transaction was open, fair, and aboveboard and that the cestuis were sui juris, informed and consented; but a transfer from a cestui to a trustee may be set aside for fraud, duress or undue influence, and it has been held that a purchase by the trustee of the cestui's interest is presumed to be invalid."

Then the writer of this work goes into some discussion of the question, citing authorities for the proposition there set forth. This section of C.J.S. cites the earlier section of 65 C.J., page 774, note 62, which has likewise been cited by the Chancellor and in *American Bank & Trust Co. v. Lebanon Bank & Trust Co.* supra. It was argued by the appellants herein that this citation from 65 C.J. is now obsolete, but we respectfully submit that it will be found, even from the citation of 90 C.J.S., above, that this exception to the rule as relied on by the appellees is the rule.

We must remember under the facts herein that after some twenty years this sale by this brother was ratified by the brother as well as his children, the appellants herein. It was more than ten years thereafter before they attempt to assert the present interest or rights herein and that the sale should be set aside and looked into. In the first instance, a sale of this kind at the very most is not void, but is voidable only at the option of the cestui. A sale of the kind may be likewise confirmed by acquiescence and a lapse of time as well as by the express act of the cestui que trust, which has happened herein. As authority for this statement see *Kahn v. Chapin,* 152 N.Y. 305, 309, 46 N.E. 489; *Hammond v. Hopkins,* 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134; *Hoyt v. Latham,* 143 U.S. 553, 12 S.Ct. 568, 36 L.Ed. 259; *Morse v. Hill,* 136 Mass. 60; *Bresee v. Bradfield,* 99 Va. 331, 38 S.E. 196; and many other that could be found. We are satisfied that reason, justice and common sense fully support this conclusion. The beneficiary may affirm such a sale. See statement and numerous authorities cited therefor, where in many of them it is held that after the beneficiary irrevocably affirms the sale the

transaction is thereby made safe from future attacks at law or in equity. See 54 Am.Jur., page 368, sec. 463.

The trust hereinabove named as beneficiaries the five children of the testator, two of whom were the sons, appellees herein, and also Trustees of this trust. There are still four of these children living who were all made parties to this litigation. The only one dead is Robert William Creighton who was the father of two of the appellants. The children of Robert William Creighton, the two appellants, and their brother are made parties defendant in this litigation. The issue of the other living beneficiaries of this trust have absolutely no present interest in the trust estate or in the administration thereof, and the only possible interest which they have or might have in the trust is the highly contingent remainder interest which is so contingent that it amounts to a mere expectancy.

Obviously from what has been said above the trust involved in this cause has not terminated, and until it does terminate, either by the death of the survivor of the Trustees, or by the action of the Trustees during their lifetime, or the survivor of them, under the discretion granted them in the trust instrument, the court cannot entertain a suit to construe the will and declare who will take the corpus of the trust upon its termination, if, indeed, any controversy exists at that time which is the subject of a judicial declaration. There is no present controversy existing or asserted by either the original bill herein, cross-bill or the answer in this cause as to the rights and interest of the estates of the remote contingent remaindermen in this trust. There is no occasion presented by the allegations on various

pleadings herein warranting any judicial construction and determination of any such rights. To do so would be clearly going beyond the reasons and necessity of the bill and cross-bill and the rights of the parties, and asking the court to render an advisory opinion on something that may not happen and should be left to wait until the time that it does happen.

As said and intimated many times herein, this proceeding is merely for a report and accounting for these Trustees of the administration of their trust to date. The only person having any interest in the trust estate, and any interest in the subject matter or proceedings are the present beneficiaries of the trust who are at the present time entitled to all the benefits thereof. The children of the deceased beneficiary, who sold his interest to the other brothers, are joined herein and we have at least to our satisfaction from what has been said heretofore shown that these children of the deceased beneficiary have no present interest herein.

Thus, the question is whether or not these Trustees have properly administered this trust to date, and this being true the present beneficiaries of the trust are the only ones who are interested.

None of the remote contingent remaindermen (reference should be back to the portion of the will quoted, and it is obvious thereunder who or what might be contingent remaindermen) could complain if the Trustees had not properly administered the trust in these respects, that is, to pay and disburse the cash dividends to the proper persons and in the proper amount, and whether or not they have conducted the estate in a correct manner in addition to paying out the cash dividends, the proper

division of stock dividends, etc. None of these remote contingent remaindermen, certainly at the present time, are entitled to receive any distribution from cash dividends from the trust estate, and, certainly not being entitled to any of these things, they have no right to object to the manner in which the Trustees are distributing the same. If the Trustees have not properly done what they should do in administering this estate as directed by this will, it is the present income beneficiaries from this trust whose income is dependent upon the proper conservation and retention of this trust estate by the Trustees who can complain if it is not done right, and not the remote contingent remaindermen who have no present interest in the trust estate.

We think the Chancellor was clearly correct in not entertaining a cross-bill to construe the will and declare the rights of these remote contingent remaindermen. The only construction of the will sought by these appellants in their cross-bill was a judicial declaration of determination of who will take as "issue per stirpes" of the five children of R. B. Creighton upon the termination of this trust. These parties not being interested now in what is going on here have no right for a judicial determination of these matters. *Gilpin v. Burrage,* 188 Tenn. 80, 216 S.W.2d 732.

For the reasons herein expressed the decree of the Chancellor is affirmed.

White, Justice, not participating.