Jerry **HAMBY** et ux., etc., Petitioners,

v.

Gary Wayne **McDANIEL** et al., Respondents.

Supreme Court of Tennessee.

Dec. 12, 1977.

Robert A. Scott, Finnell, Thompson, Scott & Logan, Cleveland, for petitioners.

Allen H. Carter, Carter & Reid, Athens, for respondents.

## OPINION

FONES, Justice.

Certiorari was granted in this case to reexamine prior judicial interpretations of the Wrongful Death Statute, that a viable fetus suffering tortious injury *en ventre sa mere* does not come within the intendment of the statute, unless born alive.

The Hambys ask that we extend the scope of the Wrongful Death Statute by holding that a viable fetus is a person within the meaning and intent of T.C.A. 20–607.

A majority of the Court adheres to the rule established in *Hogan v. McDaniel*, 204 Tenn. 235, 319 S.W.2d 221 (1958), and *Shousha v. Matthews Drivurself Service, Inc.*, 210 Tenn. 384, 358 S.W.2d 471 (1962), and affirmed in *Durrett v. Owens*, 212 Tenn. 614, 371 S.W.2d 433 (1963).

This action was instituted by petitioners Hamby as next of kin and parents of a stillborn child, petitioners alleging that the fetus was eight and one-half months *en ventre sa mere* and viable when injured in an automobile accident negligently caused by defendant Gary Wayne McDaniel. The trial court sustained a motion for summary judgment, holding that a fetus is not a "person" within the meaning of the Tennes-

see Wrongful Death Statute. The Court of Appeals affirmed.

Section 20–607 T.C.A. reads, in pertinent part as follows:

"The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death . . . ."

The identical issue that confronts us here was presented to this Court for the first time in *Hogan*. The Court observed that under the common law, death extinguished actions for tortious injuries and that rule prevailed in Tennessee until our legislature adopted the Wrongful Death Act in 1851; that under well settled principles the statute must be strictly construed against the maintenance of any right of action not expressly provided for therein.

*Hogan* held that it was not reasonable to suppose that the legislature intended to declare that an unborn child was a "person" and that its "next of kin" was entitled to sue for its prenatal injury.

The Court concluded its opinion with the following language:

"There is no ambiguity in our Wrongful Death Statute. We must consider it as it is written, not as we would have it. Only the Legislature has authority to create legal rights and interests. It results that no right of action, such as plaintiffs seek to assert, can be brought until there is legislative authority for it." 319 S.W.2d at 225.

In 1962, the Court held, "that a viable infant en ventre sa mere suffering injuries may, upon being born alive, prosecute an action against those negligently inflicting such injuries to recover compensation therefor. This being so, it naturally follows from 20–607 T.C.A. that when the child dies from such injuries, the parent of the child may prosecute a suit for such injuries and death." *Shousha v. Matthews Drivurself Service, Inc.*, 210 Tenn. 384, 392, 358 S.W.2d 471, 476 (1962).

In 1963, the plaintiffs in *Durrett v. Owens*, 212 Tenn. 614, 371 S.W.2d 433 (1963), urged the Court to overrule *Hogan* by holding that a viable child is a "person" within the meaning of the Tennessee Wrongful Death Statute, and eliminating the condition of live birth. In refusing to do so, the Court made it clear that in deciding *Shousha*, it adhered to the rationale of *Hogan* that the *statute* did not entitle the next of kin of the unborn child to sue. Further, that the *Shousha* decision was predicated upon recognition of the legal right of a child to *begin life* unimpaired by physical or mental defects from prenatal injuries, which right matures upon live birth and therefore survives under the statute.

The Wrongful Death Statute has been amended since *Durrett v. Owens, supra,* was decided. The section of the statute quoted above is exactly the same today as it was when *Hogan, Shousha* and *Durrett* were decided.

The legislature is presumed to know the interpretation which courts make of its enactments; the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction, especially where the law is amended in other particulars, or where the statute is reenacted without change in the part construed. See *Missouri v. Ross*, 299 U.S. 72, 57 S.Ct. 60, 81 L.Ed. 46 (1936); *Stern v. Miller*, 348 So.2d 303 (Fla. 1977); *Hargrove v. Newsome*, 225 Tenn. 462, 470 S.W.2d 348 (1971); *Bottomly v. Ford*, 117 Mont. 160, 157 P.2d 108 (1945); *Cunningham v. Cunningham*, 120 Tex. 491, 40 S.W.2d 46 (1931); *Walling v. Brown*, 9 Idaho 740, 76 P. 318 (1904); see also *Krohn v. Richardson Merrell, Inc.*, 219 Tenn. 37, 406 S.W.2d 166 (1966); *McKinney v. Hardwick Clothes, Inc.*, 217 Tenn. 457, 398 S.W.2d 265 (1966).

The Tennessee Legislature's failure to change the Wrongful Death Statute to provide a right of action for a viable fetus, stillborn, implies approval of the definition of "person" given by this Court in *Hogan, Shousha*, and *Durrett*, and gives the

judicial construction of the statute the effect of legislation.

Changing our construction of the statute at this time would amount to judicial legislation. We noted in *Hogan*, as follows: "Where a right of action is dependent upon the provisions of a statute, as in the case at bar, we are not privileged to create such a right under the guise of a liberal interpretation of it. Judicial legislation has long been regarded by the legal profession as unwise, if not dangerous business. It is generally an ill-starred adventure by wilful men." 319 S.W.2d at 223.

See also *Royal Jewelers Co. v. Hake*, 185 Tenn. 254, 205 S.W.2d 963 (1947); *McBrayer v. Dixie Mercerizing Co.*, 176 Tenn. 560, 144 S.W.2d 764 (1940).

The minority opinion in the case at bar suggests that the *Hogan* definition of "person" is based primarily upon the medically unacceptable premise that an unborn child "is a part of its own mother's physical body." As we read the opinion, that statement was made in rejection of the conclusion reached by the appellate courts of Minnesota, Illinois, and Mississippi, that life begins at the *moment of conception* and that the organism, as a matter of law, is a "person" *at that stage.* Nowhere in the opinion does the Court quarrel with the generally accepted definition of viable fetus. We interpret *Hogan* as predicated solely on the Court's opinion that the legislature did not intend to include the unborn, in providing for the survival of a cause of action for wrongful death of a "person".

The advocates that seek extension of the statute to embrace a viable fetus insist that the "modern thought" of legal, judicial, and other relevant disciplines, is in such accord on the question of when life begins, that it has become illogical, unreasonable, and indefensible not to include a viable fetus within the scope of the word "person". We do not think it appropriate or necessary to judicially determine when life begins because we are content to hold that the creation of a wrongful death action was properly the business of the legislative branch

of government, and the expansion of its benefits to include "viable fetus", "fetus", and/or "embryo" is likewise within its exclusive province.

Nevertheless, we think it appropriate to point out, in this opinion, that voices may yet be heard in the land insisting that "person" does not embrace the unborn, at any stage from conception to live birth. The simple truth of that statement may be supported by an examination of the United States Supreme Court opinion in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), where the underlying issue was the constitutionality of the Texas and Georgia abortion statutes.

Relevant here, is the response of the Supreme Court to the assertion by Texas that the "fetus" is a "person" within the scope and meaning of the Fourteenth Amendment. After a brief examination of the many references to "person" in the United States Constitution, the Supreme Court concluded that the use of the word in the instances cited was such that it had no prenatal application. Specifically, as used in the Fourteenth Amendment, the Court was also persuaded that the word "person" was not intended to apply to the unborn. 93 S.Ct. at 729. Later in this opinion, the Court addressed the contention of Texas that the State had a compelling interest in protecting life, from and after conception, as follows:

"We need not resolve the difficult question of when life begins. When those trained in the respective disciplines of medicine, philosophy, and theology are unable to arrive at any consensus, the judiciary, at this point in the development of man's knowledge, is not in a position to speculate as to the answer.

"It should be sufficient to note briefly the wide divergence of thinking on this most sensitive and difficult question. There has always been strong support for the view that life does not begin until live birth. This was the belief of the Stoics. It appears to be the predominant, though not the unanimous, attitude of the Jewish faith. It may be taken to represent also

the position of a large segment of the Protestant community, insofar as that can be ascertained; organized groups that have taken a formal position on the abortion issue have generally regarded abortion as a matter for the conscience of the individual and her family. As we have noted, the common law found greater significance in quickening. Physicians and their scientific colleagues have regarded that event with less interest and have tended to focus either upon conception, upon live birth, or upon the interim point at which the fetus becomes 'viable,' that is, potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks. The Aristotelian theory of 'mediate animation,' that held sway throughout the Middle Ages and the Renaissance in Europe, continued to be official Roman Catholic dogma until the 19th century, despite opposition to this 'ensoulment' theory from those in the Church who would recognize the existence of life from the moment of conception. The latter is now, of course, the official belief of the Catholic Church. As one brief *amicus* discloses, this is a view strongly held by many non-Catholics as well, and by many physicians. Substantial problems for precise definition of this view are posed, however, by new embryological data that purport to indicate that conception is a 'process' over time, rather than an event, and by new medical techniques such as menstrual extraction, the 'morning-after' pill, implantation of embryos, artificial insemination, and even artificial wombs. "In areas other than criminal abortion, the law has been reluctant to endorse any theory that life, as we recognize it, begins before live birth or to accord legal rights to the unborn except in narrowly defined situations and except when the rights are contingent upon live birth. For example, the traditional rule of tort law denied recovery for prenatal injuries even though the child was born alive. That rule has been changed in almost every jurisdiction. In most States, recovery is said to be permitted only if the fetus was viable, or at least quick, when the injuries were sustained, though few courts have squarely so held. In a recent development, generally opposed by the commentators, some States permit the parents of a stillborn child to maintain an action for wrongful death because of prenatal injuries. Such an action, however, would appear to be one to vindicate the parents' interest and is thus consistent with the view that the fetus, at most, represents only the potentiality of life. Similarly, unborn children have been recognized as acquiring rights or interests by way of inheritance or other devolution of property, and have been represented by guardians *ad litem*. Perfection of the interests involved, again, has generally been contingent upon live birth. In short, the unborn have never been recognized in the law as persons in the whole sense." [Footnotes omitted] 410 U.S. at 159–162, 93 S.Ct. at 730–731.

The Supreme Court of California, has recently rejected a plaintiff seeking expansion of that State's Wrongful Death Statute to include within the definition of "person", a viable fetus. That Court examined the legislative history of the California Statute, and the judicial decisions construing it and observed the equating "fetus" with "person" "would rewrite the statute in the guise of construing it." *Justus v. Atchison*, 19 Cal.3d 564, 139 Cal.Rptr. 97, 105, 565 P.2d 122, 130 (1977).

In 1976, the Missouri Supreme Court refused to include an unborn fetus within the definition of "person", holding that:

"[A] wrongful death action may not be maintained for the death of an unborn child. It is our view that a fetus is not a 'person' within the meaning of our wrongful death statute until there has been a live birth. We think the legislature in enacting the original act and subsequent revisions did not intend to create an action for the death of a fetus never born alive. In view of the common law rule that an unborn fetus was not a 'person' we think if there had been an inten-

tion to create such an action it would have been specifically so stated." *State ex rel. Hardin v. Sanders,* 538 S.W.2d 336, 338–339 (Mo.1976).

Affirmed. Costs are adjudged against Petitioners.

COOPER, C. J., and HARBISON, J., concurring.

HENRY, Justice, dissenting.

I respectfully dissent from the views expressed by my esteemed colleagues.

This Court was first presented with the issue of whether a viable fetus, capable of living outside the uterus, is a person protected by the wrongful death statute in *Hogan v. McDaniel,* 204 Tenn. 235, 319 S.W.2d 221 (1958). This was an action brought to recover for the death of a viable fetus after a pregnancy of thirty-eight weeks.[1]

The Court held that an unborn fetus was not a person in contemplation of the statute. The Court's opinion seems to be predicated primarily upon two bases, viz.:

(1) the fact that the weight of authority was against such a construction;

(2) its view that an unborn child "is a part of its own mother's physical body" and is not a person "capable of existence separate from its mother."

It should be noted that *Hogan* was decided almost twenty years ago and that during this period phenomenal developments have marked this area of tort law. In *Hogan* the Court quotes 16 Am.Jur. *Death* § 75, at 56, as follows:

"Although there is authority to the contrary, the weight of authority supports the rule that, in the absence of a statute, a prenatal injury affords no basis for an action for wrongful death by the parents or personal representative of the child. 204 Tenn. at 242, 319 S.W.2d at 224."

Today, 62 Am.Jur.2d *Prenatal Injuries* (transferred from Death) § 2 (1972), after pointing out that in 1946 "the tide of judicial opinion began to turn" and after citing cases decided since 1946, states:

Numerous other cases recognizing a right of action for prenatal injuries have since been decided, resulting in a *dramatic reversal* of the previous judicial attitude in this area. Indeed, it has been said that seldom in the law has there been such *an overwhelming trend* in such a relatively short period of time as there has been in the trend toward allowing recovery for prenatal injuries to a viable infant. (Emphasis supplied).

Today 26 jurisdictions allow recovery for stillborn infants under wrongful death statutes;[2] 12 do not allow such suits;[3] and 13 have not passed upon the matter.[4] This erodes a substantial portion of the reasoning for the conclusion reached in *Hogan.*

Under the modern concept of medicine I do not believe it arguable that an unborn child has no independent existence or that it is "a part of its own mother's physical body." Professor Dix Noel, in his 1959 Tennessee Survey on Torts, 12 Vand.L.Rev. 1350, makes this apt comment:

. . . it is unfortunate that the court placed its decision on the ground that a viable child has no separate legal personality and is merely "a part of its own mother's physical body." As noted in a standard treatise, "medical authority has recognized that the child is in existence from the moment of conception." (Citing Prosser, *Torts,* Sec. 36, at 174 [2d ed. 1955]). 12 Vand.L.Rev. at 1366.

---

1. Equated by the Court and counsel, and in subsequent cases, with nine and one-half months.

2. Alabama, Alaska (Fed.Court), Connecticut, Delaware, District of Columbia, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Hampshire, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Washington, West Virginia and Wisconsin.

3. Arizona, California, Florida, Iowa, Missouri, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Tennessee and Virginia.

4. Arkansas, Colorado, Hawaii, Idaho, Maine, Montana, New Mexico, North Dakota, South Dakota, Texas, Utah, Vermont and Wyoming.

Note: For case citations see Annot., "Action for Death of Unborn Child," 15 A.L.R.2d 992 (1967).

Four years after *Hogan*, the Court decided *Shousha v. Matthews Drivurself*, 210 Tenn. 384, 358 S.W.2d 471 (1962). This case involved the death of triplets who were injured before their birth and while *en ventre sa mere*, but who died shortly after birth and two days after the injury.

The Court specifically confined *Hogan* "to the facts therein presented" and to all intents and purposes retreated from the *Hogan* rationale. In contradistinction to the *Hogan* holding that an unborn child is "a part of its own mother's physical body," the Court quotes with obvious approval from an article appearing in *Vanderbilt Law Review*, wherein it was said:

> That an infant *en ventre sa mere* is a *distinct entity is a scientific, common-sense, legally recognized fact.*" (Emphasis supplied). 210 Tenn. at 393. 358 S.W.2d at 475.

Also quoted with evident approval is this language from *Tennessee Law Review*:

> An infant *in ventre sa mere*, or in the mother's womb is supposed in law to be born for many purposes. It is capable of having legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. 210 Tenn. at 394. 358 S.W.2d at 475.

The late Justice White, in *Shousha*, met the standard *stare decisis* argument thusly:

> While we adhere strongly to the doctrine of stare decisis, we believe even more strongly in the growth and development of the law to the end that every party who suffers a wrongful injury may have a remedy for redress thereof. 210 Tenn. at 389. 358 S.W.2d at 473.

While *Shousha* holds that a "viable infant *en ventre sa mere* suffering injuries may, *upon being born alive*, prosecute an action," (emphasis supplied) 210 Tenn. at 397, 358 S.W.2d at 476, there is no escape from the conclusion that this case, decided in the early stages of the developing law on the subject, must be regarded as a substantial modification of *Hogan*. Among other things, this follows from the Court's holding that the rule of non-liability to a viable child for prenatal injuries is "too harsh and is contrary to that justice which the law seeks to save and promote." 210 Tenn. at 395, 358 S.W.2d at 476.

It was this logic that prompted Judge Parrott to dissent from the holding of the Court of Appeals. He points out that if "two of the infants had been killed prior to birth and the third was born alive but died immediately after birth, a wrongful death action could only be maintained on behalf of the third infant." Judge Parrott quotes from the Ohio Court of Appeals, in *Stidam v. Ashmore*, 109 Ohio App. 431, 167 N.E.2d 106, 108 (1959).

> . . . it would be absurd if recovery could be had for such injuries, unless those injuries were so severe as to cause death before birth.
>
> Such a distinction could lead to bizarre results. Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of the one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither. Inasmuch as the Supreme Court has already determined that there is a cause of action in the case of the one, we can see no valid reason for denying it in the other.

Irrespective of the implications of *Shousha*, the subsequent case of *Durrett v. Owens*, 212 Tenn. 614, 371 S.W.2d 433 (1963) (opinion also by Justice White), makes it clear that *Shousha* did not overrule *Hogan*, and holds without equivocation that under our wrongful death act there can be no recovery for the death of a stillborn child as a result of prenatal injuries. This is the law today.

## II.

A study of these three Tennessee cases leaves me with the impression that our law is primarily based upon the medically unac-

ceptable basis that an unborn child "is a part of its own mother's physical body," 204 Tenn. at 243, 319 S.W.2d at 224, and has no separate existence of its own until after birth. By definition, this is a fallacy. Dorland's *Medical Dictionary* (23d ed. W. B. Saunders Company 1959) instructs us that a "fetus" is "the developing young in the human uterus after the end of the second month." Before eight weeks, according to the same authority, "it is called an embryo; it becomes an infant when it is completely outside the body of the mother." A fetus becomes viable when it "has reached such a stage of development that it can live outside the uterus." *Id.* It would thus appear that a viable fetus has its own identity, is capable of living outside the uterus, and is not "a part of its own mother's physical body."

The Massachusetts case of *Dietrich v. Northampton,* 138 Mass. 14, 52 Am.Rep. 242 (1884), is generally recognized to be the source of the rule that a child *en ventre sa mere* is a part of the mother and has no separate existence and that, therefore, there may be no recovery for prenatal injuries.[5] The Court in *Hogan* relied heavily on this case.

The tide of judicial opinion did not begin to turn against *Dietrich* until 1946, when the case of *Bonbrest v. Kotz,* 65 F.Supp. 138, came before the United States District Court for the District of Columbia. Rejecting the "part of its mother" concept as being "rather anomalous" and a "contradiction in terms" and noting that "[t]he law is presumed to keep pace with the sciences and medical science certainly has made progress since 1884," 65 F.Supp. at 143, the Court permitted recovery for injuries sustained by a viable fetus.

The first state Supreme Court to break away from *Dietrich* was Ohio. In *Williams v. Marion Rapid Transit,* 152 Ohio St. 114, 87 N.E.2d 334, 10 A.L.R.2d 1051 (1949), the Court held that a right of action existed in favor of a viable fetus for prenatal injuries.

Thereafter the case of *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R.2d 634 (1949), came before the Supreme Court of Minnesota. This is the first American case to permit a recovery for the wrongful death of a stillborn infant. It is of interest to note that the *Hogan* Court did not approve of *Verkennes* but the *Shousha* Court cited it with apparent approval.

The retreat from *Dietrich* has long since taken on flood-tide proportions; and, as indicated earlier, the majority of American jurisdictions now permit recovery for injuries causing the death of a stillborn fetus. *See* Annot., "Action for Death of Unborn Child," 15 A.L.R.3d 992 (1967).

Numerous cases discuss and reject the notion that impelled this Court in *Hogan,* that an unborn child is a part of its mother. One of the better reasoned decisions is the case of *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785 (1971), involving an eight-month-old viable infant, wherein the Court discussed this critical area as follows:

The instructive dissent of Mr. Justice Boggs, in *Allaire v. St. Lukes Hospital,* 184 Ill. 359, at 368, 56 N.E. 638, at 640, was written in 1900. His view has been largely adopted in this country.

The majority in that case held:

"That a child before birth is, in fact, a part of the mother, and is only severed from her at birth, cannot, we think, be successfully disputed."

Justice Boggs wrote: "Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother, it is not merely a part of her body, for her body may die in all of its parts and the child remain alive, and capable of maintaining life, when separated from the dead body of the mother."

5. Massachusetts now permits recovery. See *Mone v. Greyhound Lines, Inc.,* 331 N.E.2d 916 (Mass.1975).

If the mother can die and the fetus live, or the fetus die and the mother live, how can it be said that there is only one life?

If tortious conduct can injure one and not the other, how can it be said that there is not a duty owing to each?

The phenomenon of birth is not the beginning of life; it is merely a change in the form of life. The principle feature of that change is the fact of respiration. But the law does not regard the incidence of respiration as the sole determinative of life. Respiration can be artificially induced or mechanically supplied. Life remains.

That the fetus cannot be seen is hardly the measure of life. That it cannot cry or see or remember—can these things control its right to live?

What of the capacity for "independent" life?

A baby fully born and conceded by all to be "alive" is no more able to survive unaided than the infant *en ventre sa mere*. In fact, the babe in arms is less self-sufficient—more dependent—than his unborn counterpart.

Does he want to eat? He cannot take himself to his mother's breast, or even discover the use of it without her help. He cannot keep himself warm or dry or ward off danger. He lives by the sufferance of others, demanding the means of sustaining his life by the noisy, endearing, obvious fact of his presence.

The demands of the unborn child are no less total, but they are enforced by physical rather than emotional attachments. Ensconced and protected, he takes what he needs without asking. Only the conscious or negligent acts of others can deprive him of sustenance.

The phenomenon of birth is an arbitrary point from which to measure life. True, we reckon age by counting birthdays. The Chinese count from New Years. The choice is arbitrary.

Birth may be natural, where the fetus has commenced the process by chemical changes within himself, and the mother has cooperated; it may be intentional, as in the case of Cesarean section or induced labor; or it may be accidental, as where the child is separated from the mother by trauma.

One need not be alive in order to be born; as the delivery of stillborn babies demonstrates. Neither is it possible for one to be born alive unless he be living prior to the birth.

A fetus having died within its mother's womb is dead; it will not come alive when separated from her. A fetus living within the mother's womb is a living creature; it will not die when separated from her unless the manner, the time or the circumstances of separation constitute a fatal trauma.

The fact of life is not to be denied. 188 N.W.2d at 786–788.

In *Mone v. Greyhound Lines, Inc.,* 331 N.E.2d 916 (Mass.1975), the Court agreed with the majority of jurisdictions that conditioning a right of action on whether a fatally injured child was born alive or dead was not only an artificial and unreasonable demarcation, but unjust as well. The Court cited the rationale of *Todd v. Sandidge Constr. Co.,* 341 F.2d 75 (4th Cir. 1964):

If the trauma is severe enough to kill the child, then there could be no recovery; but if less serious, allowing the child to survive, there might be recovery. Again, if the fatality was immediate, the suit could not prevail, but if the death was protracted by a few hours, even minutes, beyond birth, the claim could succeed. Practically, it would mean that the graver the harm the better the chance of immunity. *Id.* at 77.

It should be noted that the Tennessee Vital Statistics Act of 1941 (Section 53–401, et seq., T.C.A.) defines stillbirth to mean "a birth after twenty (20) weeks of gestation which is not a live birth." Section 53–402(c), T.C.A. In terms of months this tends to indicate that after about four and one-third months we treat the fetus as a separate entity, although "[v]iability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24

weeks." *Roe v. Wade,* 410 U.S. 113, 160, 93 S.Ct. 705, 730, 35 L.Ed.2d 147, 181 (1973). A death certificate is required under Tennessee law for all stillbirths. Sections 53–438, 53–439, T.C.A.

I think that to permit a wrongful death action based upon the infliction of tort upon a fetus subsequently born alive but whose death immediately ensues, and to withhold such action where the fetus is born dead is illogical, unreasonable and indefensible. I would hold that a viable fetus is a "person" within the meaning and intent of Section 20–607, T.C.A., and that an action will lie at the instance of the statutory beneficiaries for his or her wrongful death. Such a holding would, in no sense, invade the province of the legislature. It is the duty of the judicial branch to construe the language of legislative enactments. The legislature, in my view, merely intended to provide a wrongful death action, leaving its administration and construction to the courts.

My brother BROCK joins in this dissent.

BROCK, Justice, dissenting.

I respectfully dissent.

While the Tennessee Wrongful Death Statute did, as the majority notes, change a rule of the common law, it does not follow that the statute must be strictly construed. See, e. g., *Southeastern Aviation, Inc. v. Hurd,* 209 Tenn. 369, 355 S.W.2d 436 (1962). Statutes changing common-law rules may also be remedial, 82 C.J.S. *Statutes* § 388 (1953), and thus, entitled to a liberal construction so as to effectuate the purposes for which they were enacted.

> "Death statutes have their roots in dissatisfaction with the archaisms of the [earlier] law . . . . It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system." *Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 350–51, 57 S.Ct. 452, 456, 81 L.Ed.2d 685 (1937) (Cardozo, J.).

In my opinion, resolution of the question of whether an unborn child is a "person" within the meaning of our Wrongful Death Act should effectuate the basic purposes of such legislation—"to afford redress in wrongful death cases where no redress was obtainable at common law, and *to ameliorate the harsh rule which denied any recovery if an injured person died, while permitting an award of damages if the person lived."* 25A C.J.S. *Death* § 14 (1966) (emphasis added).

In *Shousha v. Matthews Drivurself Serv., Inc.,* 210 Tenn. 384, 358 S.W.2d 471 (1962), parents were allowed to bring actions for the wrongful deaths of their triplet sons where each child was born alive and subsequently died as a result of injuries received prior to birth.

It is no less a loss to survivors where, as here, the child died before birth. It seems inconsistent to permit recovery for prenatal injuries to the child born alive but to deny recovery to a child whose prenatal injuries inflicted by the tortfeasor are severe enough to cause stillbirth. As the Maryland Supreme Court observed: "The cause of action arose at the time of the injury, and we see no more reason why it should be cut off because of the child's death before birth, than if it died thereafter." *State ex rel. Odham v. Sherman,* 234 Md. 179, 198 A.2d 71, 73 (1964).

Because this inconsistency is essentially the same as that addressed by the wrongful death statutes, I would hold that an unborn child is a "person" within the meaning of the Tennessee Wrongful Death Statute, thus permitting the parents to recover notwithstanding the death of the child. In my opinion it is clear that our Legislature intended that whatever loss there is should be compensated.

I am authorized to state that Mr. Chief Justice HENRY joins in this dissent.