Joe E. Hogan et al.

*v.*

Charlie McDaniel

(*Knoxville,* September Term, 1958.)

Opinion filed December 12, 1958.

236

TANNER, THRASHER & MORGAN, Chattanooga, for plaintiffs in error.

GOINS & GAMMON and JOSIAH BAKER, GUS A. WOOD, JR., Chattanooga, for defendant in error.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case is before the Court on appeal from the action of the trial court in sustaining a demurrer to the plaintiffs' declaration, which reads in part as follows:

"That heretofore on or about the 29th day of January, 1958, at approximately 3:45 P.M., the decedent, an unborn child, viable, weighing 6 pounds 15½ ounces, developed during 38 weeks of pregnancy of the mother, Mrs. Joe E. (Jo Etta) Hogan, was riding *en ventre sa mere* in automobile being driven by said Mrs. Joe E. (Jo Etta) Hogan, in a southerly direction on Highway 58 approaching the intersection of said highway with

Turkey Foot Road, Hamilton County, Tennessee; that at said time and place the defendant, Charlie McDaniel, was driving a shcool bus, owned by him, in an easterly direction on Turkey Foot Road approaching Highway 58; that as the Hogan car was in the process of passing through the said intersection defendant McDaniel failed to bring his bus to a stop but overran the highway and drove the front end of his said bus into, upon and against the right side of the Hogan car knocking it out of control and causing it to plunge down an embankment overturning several times before it came to rest; that immediately before the collision Mrs. Hogan had been driving her car at a reasonable and proper rate of speed and in a proper manner and on the right hand or proper side of Highway 58 and so continued up to the time of the collision; that the defendant Mc-Daniel operated his bus in a manner which was reckless, negligent and unsafe under the conditions then prevailing as will be hereinafter shown more fully so that the collision occurred and Mrs. Hogan was injured and her unborn male son was killed, all as a result of the defendant's negligence as hereinafter set forth.''

The plaintiffs are the parents of the unborn child mentioned in the declaration.

The suit is sought to be maintained under the Wrongful Death Statute (20-607, T.C.A.), which reads, as follows:

''The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished

by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his next of kin; or to his personal representative, for the benefit of his widow or next of kin; where his or her natural parents or parent or next of kin are unknown, then to his or her legally adoptive parent or parents, or to the administrator for the use and benefit of the said adoptive parents or parent; the funds recovered in either case to be free from the claims of creditors. In the case of the death of a married woman, such right of action shall pass to the surviving husband.''

The sole question at issue under the demurrer involves the right to sue for the death of an unborn viable child. The demurrer, however, poses three separate but related issues for decision, which thus appear on the defendant's brief:

''(1) Is an unborn viable child a 'person' within the meaning and contemplation of the Tennessee Wrongful Death Statutes?

''(2) Does an unborn viable child have a next of kin within the meaning and contemplation of the Tennessee Statutes of Descent and Distribution?

''(3) Has an unborn viable child a legal personality separate and distinct from its mother?''

The plaintiffs contend that this action is maintainable under the aforesaid statute in that:

''An unborn child, viable, weighing 6 pounds, 15½ ounces, developed during 9½ months of pregnancy, alive and capable of existence separate and apart from his mother is a 'person' under the Tennessee Wrongful Death Statute, and any right of action of said per-

son for wrongful death survives and passes to the next of kin."

The trial judge in a memorandum opinion held that the plaintiffs' right of action was controlled by the statute; that it was in derogation of the common law and should be strictly construed. In other words, if the statute is not broad enough to create a right in an unborn viable child to sue for its wrongful death then it has no right, it does not exist.

This statute in substance is declaratory of what is known as "Lord Campbell's Act". It is in no sense a part of the common law. Where a right of action is dependent upon the provisions of a statute, as in the case at bar, we are not privileged to create such a right under the guise of a liberal interpretation of it. Judicial legislation has long been regarded by the legal profession as unwise, if not dangerous business. It is generally an ill-starred adventure by wilful men.

Learned counsel for the plaintiffs have urged upon us the duty to follow what is claimed to be the "trend of modern decisions" regarding the legal status of an unborn viable child. While we are not unfriendly to this suggestion, we cannot yield to it if the rights sought to be maintained are beyond the purview of the statute and contrary to the weight of authority.

At common law the right to recover damages for personal injuries was extinguished by the death of the injured person. This artificial rule of the common law prevailed in this State until the Act of 1851, Chapter 17: 20-607, T.C.A.; *Railway Co. v. Lilly*, 90 Tenn. 563, 18 S.W. 243, 244. The original Act of 1851 has since been

amended from time to time but the effect of the said Act as finally amended is to create a liability in favor of certain persons who are specifically pointed out. In *Railway Co. v. Lilly, supra,* it is said: "* * * the courts will not extend or enlarge that liability by liberality of construction, *but will confine it to cases clearly within the provisions of the act.* No right of action will be inferred, no remedy will be given in favor of any persons, except those distinctly contemplated as beneficiaries." (Emphasis ours.)

Counsel for the plaintiffs earnestly insists that this unborn viable child is "a person" within the meaning of our Wrongful Death Statute, who, had its death not ensued, would have had a right of action against the defendant which passed to the plaintiffs as the sole next of kin of the deceased child. Several decisions are cited in support of this contention, and we will now take notice of them.

In *Verkennes v. Corniea,* 229 Minn. 355, 38 N.W.2d 838, 839, 10 A.L.R.2d 634, the theory that an unborn viable child is a person capable of an existence separate from its mother, citing authority, holds that under its Wrongful Death Statute such child may have a right of action for its negligent killing. The statute upon which such right of action rests provides:

"When death is caused by the wrongful act or omission of any person or corporation, the personal representative of the decedent may maintain an action therefor if he might have maintained an action, had he lived, for an injury caused by the same act or omission."

The Court considered the case of *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am.Rep. 242,

and held: ''* * * as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her,'' citing many cases, but at the same time observing that there are decisions to the contrary, such as *Allaire v. St. Luke's Hospital,* 184, Ill. 359, 56 N.E. 638, 48 L.R.A. 225, where the majority holds: ''An infant cannot maintain an action for injuries received before its death.'' Boggs, J., dissenting. However the Court in a later opinion by Mr. Justice Schaefer in *Amann v. Faidy,* 415 Ill. 422, 114 N.E.2d 412, overruled the Allaire case and held that under the Illinois Wrongful Death Statute, S.H. A. ch. 70, sec. 1, a right of action would lie by the personal representative of the decedent, who suffered a fatal injury prior to its birth but who survived, death ensuing after its birth.

In *Rainey v. Horn,* 221 Miss. 269, 72 So. 2d 434, 439, relied on by the plaintiffs' counsel, the gravamen of the charge was that the defendant, Dr. Horn, was guilty of malpractice in the negligent delivery of the child, and whose negligence caused its death. The Mississippi Supreme Court held that under its Wrongful Death Statute, Code 1942, sec. 1453, the right of action of the child survived to its personal representative. The Court after an elaborate discussion of the cases above referred to, and some other decisions, said:

''While the question considered in the cases hereinabove discussed deal directly with infants who survived birth, the question for our decision involves death of the infant before birth. Only a few cases are reported involving the right of the next of kin to maintain an

action under statutes patterned after Lord Campbell's act for the wrongful death of an unborn child. It is generally held that such action may not be maintained."

While the foregoing decisions are entitled to the highest respect (although there are dissenting views expressed in most of them), we must consider the issue in the case at bar and the plaintiffs' right of action in the light of our own Wrongful Death Stattue, *supra,* as well as this Court's interpretation of it, pertinent parts of which we have quoted with emphasis at the beginning of this opinion. In 16 Am. Jur. (Death), Section 75, page 56, it is said:

"Although there is authority to the contrary, the weight of authority supports the rule that, in the absence of a statute, a prenatal injury affords no basis for an action for wrongful death by the parents or personal representative of the child. This is true where the statute giving a right of action for wrongful death is construed as conferring such right only where the injured person could himself have maintained an action for damages had he lived, and a child so injured is regarded as having no right of action."

"No action lies for the death of a child resulting from injuries received by it while *en ventre sa mere,* the child being subsequently born alive, because such child had no right of action for the injury." 25 C.J.S. Death sec. 24, page 1093.

The importance of *Railway Co. v. Lilly, supra,* is that this Court emphasized the fact that our Wrongful Death Statute must be strictly construed against the mainte-

nance of any right of action not expressly provided for therein. In the case at bar we are asked to sustain the plaintiffs' suit on the theory that they are "the next of kin" of their unborn viable child. But is it reasonable to suppose that the Legislature intended to declare that an unborn child is "a person", and that its "next of kin" is entitled to sue for its prenatal injury? In other words, was any such right of survivorship contemplated? We think not.

The cases relied on by plaintiffs' counsel, and which follow the minority rule, are based upon the notable advance in medical science and the biological fact that life begins at the moment of conception, and that it is such a vital organism as to be at once a person *in esse.* This is a pure fiction of the law. True it is that we have witnessed a great advance in the field of medical science, as well as the skill and knowledge of men of learning who preserve and prolong human life, yet it must be admitted that they cannot create a right of action at law. Thus the principal cases relied upon, to-wit, *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838; *Amann v. Faidy,* 415 Ill. 422, 114 N.E.2d 412; and *Rainey v. Horn,* 221 Miss. 269, 72 So.2d 434, *supra,* reach the conclusion that since life begins at the moment of conception that this organism as a matter of law is "a person" capable of existence separate from its mother. Under the weight of authority cited in this opinion it does not have such an existence. In truth and in fact, it is a part of its own mother's physical body. If our statutes should be so construed as to sustain such an action at law, there would be at once created a separate right of action from that of the mother in every case of an injury resulting in a miscarriage.

It is inconceivable that the Legislature contemplated the creation of such a right in the adoption of our Wrongful Death Statute.

The authorities are very numerous in holding that the mother has a right of action for damages for any injury proximately causing a miscarriage. But there is no right of action for any alleged injury to the unborn child. In 10 A.L.R.2d 640, the following rule of law, as applicable to such injuries, is thus stated:

"* * * While such injuries are actionable, and compensation may be awarded for the physical and mental sufferings occasional by the miscarriage, it is generally held that recovery cannot be had for the death of the unborn child."

While the foregoing statement by the annotator is supported by the weight of authority, as appears from cases cited, cases are also cited to the contrary, such as *Snow v. Allen*, 227 Ala. 615, 151 So. 468.

Considering the insistence that an unborn child has certain right in property, we think it is foreign to the issue now before us. While it is true that property may vest in a child *en ventre sa mere* by way of a valid devise or bequest or by inheritance, and courts of equity are bound to protect such an interest, we know of no authority which supports the contention that any action may be brought by next of kin prior to its birth to assert any right to share in such child's *inchoate* estate. If such child was stillborn, it had no estate that could pass to an heir or next of kin.

There is no ambiguity in our Wrongful Death Statute. We must consider it as it is written, not as we

would have it. Only the Legislature has authority to create legal rights and interests. It results that no right of action, such as plaintiffs seek to assert, can be brought until there is legislative authority for it.

The assignments of error are overruled, and the judgment of the trial court is affirmed.