ALFRED SHOUSHA, and ANNETTE SHOUSHA, as next of kin and parents of LUKE SHOUSHA, Plaintiffs-in-Error,

*v.*

MATTHEWS DRIVURSELF SERVICE, INC. and ROBERT LEE YELL, Defendants-in-Error.

ALFRED SHOUSHA and ANNETTE SHOUSHA, as next of kin and parents of JOHN SHOUSHA, Plaintiffs-in-Error.

*v.*

MATTHEWS DRIVURSELF SERVICE, INC. and ROBERT LEE YELL, Defendants-in-Error.

ALFRED SHOUSHA and ANNETTE SHOUSHA, as next of kin and parents of MATTHEW SHOUSHA, Plaintiffs-in-Error.

*v.*

MATTHEWS DRIVURSELF SERVICE, INC. and ROBERT LEE YELL, Defendants-in-Error.

358 S.W.2d 471.

(*Knoxville,* September Term, 1961.)

(May Session, 1962.)

Opinion filed June 5, 1962.

FRANK M. GLEASON, Rossville, Ga., ROBERTS & WEILL, Chattanooga, for plaintiffs in error.

MILLIGAN, MILLIGAN & HOOPER, Chattanooga, for defendants in error.

Mr. Justice White delivered the opinion of the Court.

These three appeals are from the action of the Trial Court in sustaining a demurrer to the declaration in each case. They sound in tort and grow out of the same factual situation presenting the same legal problems and will, therefore, be considered and disposed of by us in one opinion applicable to all three cases.

Alfred Shousha and wife, Annette Shousha, as parents, seek to recover damages for the personal injuries and deaths of their triplet sons. The declaration in each case charges that the defendants were guilty of common law and statutory negligence proximately causing injuries to their infant child, from which injuries said child died soon after birth.

It is charged in each declaration that the mother, Annette Shousha, on September 10, 1961, was driving an automobile along Market Street in the City of Chattanooga, Tennessee, and that she brought her automobile to a stop in obedience to a traffic light at the intersection of Main Street. It is alleged that the defendant, Yell, carelessly, recklessly and heedlessly drove a truck belonging to his co-defendant, Matthews Drivurself Service, Inc., into and against the rear of the automobile driven by Mrs. Shousha inflicting serious, severe and mortal personal injuries on said infant child, who was at the time riding as a guest en ventre sa mere in the automobile operated by his mother.

The declaration charges that the body of the infant child was bruised, mashed and crushed by the impact of

the collision, and that as a direct and proximate result of said injuries the child died intestate later on the same day of his birth, September 12, 1961. At the time of the accident, the infant, Luke Shousha, had reached that period of prenatal maturity where he was capable of independent life apart from his mother, and but for the injuries received in this automobile wreck, he would have continued to live and enjoy a healthy and normal life.

The defendants filed a demurrer as follows:

"Come the defendants and for demurrer say that plaintiff's declaration is insufficient in law because:

"1. At the time of the alleged injury to plaintiff's intestate, the child was en ventre sa mere and not a person alive and separate from its mother.

"2. Plaintiff's suit is sought to be maintained under the Wrongful Death Statute, 20-607 T.C.A., and plaintiff's intestate was not a person within the meaning of said Wrongful Death Statute."

The question squarely presented to this Court for the first time is whether a viable child (children in these cases) who survives birth but later dies from prenatal injuries may prosecute a suit for damages for such injuries. If he may do so, then it follows that a suit may be maintained for his death resulting from such injuries under our Wrongful Death Statute by the beneficiaries named therein.

Counsel for defendants pose the question in this manner: "Is a viable child, which survives birth but later dies from prenatal injuries, a person within the meaning

and contemplation of the Tennessee Wrongful Death Statute?''

In determining the answer to this interesting and important question, we quote certain pertinent parts of Section 20-607 T.C.A.:

''The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to * * * his natural parents * * *.''

Of course, this statute is not a part of the common law. It is, in substance, similar to what is known in the law as ''Lord Campbell's Act''. At common law the right to recover damages for personal injuries was extinguished by the death of the injured person. This rule prevailed in this State until the adoption of Chapter 17, Public Acts of 1851, which, as amended, is now embodied in the statute aforesaid.

In the cases now under consideration the injured children lived following their birth and died ''later on the same day of their birth''.

It is the strong insistence of counsel for the plaintiffs that these unborn viable children were persons within the meaning of our Wrongful Death Statute and, therefore, their right of action which they would have had, according to counsel, had they lived passed to the plaintiffs as parents of each deceased child.

It is alleged that each child was viable at the time of the receipt of the injuries from which he died. The word

viable is defined in the American Illustrated Medical Dictionary by Dorland, 11th Edition, "a fetus that has reached such a stage of development that it can live outside of the uterus".

In other words, it is claimed that at the time of the prenatal injury to each of the triplets that the fetus had reached such a stage of maturity that it was capable of independent life apart from its mother. Further it is claimed that upon the birth of said child, alive, the remedy to enforce the substantive right accruing to him at the time of his prenatal injury was available to him.

The defendants, however, cite and rely upon the case of *Hogan v. McDaniel,* 204 Tenn. 235, 319 S.W.2d 221. In that case, decided in 1958, the Court was dealing with an action commenced by parents of an unborn child for the death of said child resulting from injuries sustained by it prior to birth and from which said child died before birth. We believe the rationale of the Hogan case is that the Statute did not entitle the next of kin or parents of an unborn child to sue for injuries sustained which brought about its death before it was born.

The ruling in the *Hogan v. McDaniel* case is to be confined to the facts therein presented. While we adhere strongly to the doctrine of stare decisis, we believe even more strongly in the growth and development of the law to the end that every party who suffers a wrongful injury may have a remedy for redress thereof.

In the case of *State ex rel. Pitts v. Nashville Baseball Club,* 127 Tenn. 292, 307, 154 S.W. 1151, 1155, the Court through Mr. Justice Green, later Chief Justice, said:

"It is a familiar principle that stare decisis only applies with reference to decisions directly upon the

point in controversy. The point in controversy here as to the proper passage of this bill by the Senate was not considered in *Hayes v. State*.

"Only the points in judgment arising in a particular case before the court are precedents for future decisions. *Clark v. Lary*, 3 Sneed 77; *Louisville, etc., R. Co. v. (Davidson) County Court*, 1 Sneed, (637) 638, 62 Am.Dec. 424.

"The Supreme Court of the United States has said:

" 'Doubtless the doctrine of stare decisis is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue.' *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 574, 15 Sup.Ct. 673, 678, (39 L.Ed. 759)."

█ It is familiar law that a decision is authority for the point or points decided, and nothing more, and that general expressions in an opinion are to be taken in connection with the case in which they were used, and when they go beyond that, they are not authority for another case. *Aladdin Industries, Inc. v. Associated Transport, Inc. et al.*, 45 Tenn.App. 329, 352, 323 S.W.2d 222 (citing cases.)

The words of Mr. Chief Justice Marshall expressed in the case of *Cohens v. Commonwealth of Virginia*, 6 Wheat. 264, 398, 19 U.S. 264, 398, 5 L.Ed. 257, 290, are also applicable when he said: "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used."

In *Hogan v. McDaniel* the Court passed upon an entirely different situation from the case at bar. Other cases and Encyclopedias of law involving situations similar to the case for decision were discussed. For instance, the case of *Dietrich v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am.Rep. 242, was referred to with apparent approval.

However, the Massachusetts Court in the case of *Keyes v. Construction Service, Inc.,* 340 Mass. 633, 165 N.E.2d 912, 914, decided in April 1960, held:

"* * * Natural justice demands recognition of a legal right of a child to begin life unimpaired by physical or mental defects resulting from the injury caused by the negligence of another. A manifest wrong should not go without redress. Since the law protects an unborn child in the descent and devolution of property whenever it would be for the benefit of the child and in the enforcement of criminal law, the unborn child is regarded as a legal entity; therefore by analogy the law should recognize the right of an unborn child not to be injured tortiously by another."

The Court also held that such a child if born alive would have a right of action for any injuries wantonly and negligently inflicted upon his or her person after reaching the age of viability.

That Court in this same case held that the administrator of the estate of a stillborn child would have no right of action for prenatal bodily injuries and resulting death which were inflicted on a child in an automobile collision when it was a viable child in the womb of its mother. *Hogan v. McDaniel* is to the same effect.

In discussing the old Dietrich case the Massachusetts Court said: "There is no need to reverse the Dietrich decision which doubtless was right when rendered but we recognize that in view of modern precedent its application should be limited to cases where the facts are essentially the same."

In the case of *Hall v. Murphy*, 236 S.C. 257. 113 S.E.2d 790, the exact question for decision herein was presented. The facts were that the mother was injured in an automobile accident and prematurely gave birth to a child, Ruth Elizabeth Hall, who lived only four hours, and that the child's death resulted from injuries sustained in the collision. The opinion in that case assumed that the child was viable.

This case, decided in April 1960, reviewed the Dietrich case decided in 1884, which was followed in 1900 by the Illinois Supreme Court, one Justice dissenting, in the case of *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 56 N.E. 638, 48 L.R.A. 225.

A number of other decisions followed the holdings in Dietrich and Allaire, but in 1949 a trend away from the Dietrich case began. *Williams v. Marion Rapid Transit, Inc.*, 152 Ohio St. 114, 87 N.E.2d 334. 10 A.L.R.2d 1051; *Verkennes v. Corniea*, 229 Minn. 365, 38 N.W.2d 838, 10 A.L.R. 2d 634. This trend has continued.

Among the more recent cases permitting recovery are: *Damasiewicz v. Gorsuch*, 1951, 197 Md. 417, 79 A.2d 550; *Tucker v. Howard L. Carmichael & Sons, Inc.*, 1951, 208 Ga. 201, 65 S.E.2d 909; *Rainey v. Horn*, 1954, 221 Miss. 269, 72 So.2d 434; *Mallison v. Pomeroy*, 1955, 205 Or. 690, 291 P.2d 225; *Prates v. Sears, Roebuck & Co.*, 1955, 19

Conn.Sup. 487, 118 A.2d 633; *Mitchell v. Couch,* 1955, Ky., 285 S.W.2d 901; *Poliquin v. MacDonald,* 1957, 101 N.H. 104, 135 A.2d 249.

Writers who have considered the question have criticized the Dietrich case as unsound and illogical. They have uniformly urged that a viable child, who survives birth, should be permitted, upon proper proof, to recover for injuries incurred before birth.

An outstanding article "Tort Actions For Injuries To Unborn Infants" by William T. Gamble, now of the Kingsport Bar, discussing the question and approving the substantive right of a viable child surviving birth to recover for prenatal injuries appears in 3 Vanderbilt Law Review (1950) at page 282 through 297, and he said in conclusion:

"That an infant en ventre sa mere is a distinct entity is a scientific, common-sense, legally recognized fact. That this entity may suffer prenatal injuries and carry those injuries into postnatal life is well known. That in many cases adequate proof of causal relation could be made has been demonstrated. That no flood of fraudulent and ill-founded suits would result from allowing such actions is proved by the experience of those jurisdictions allowing them. That an action should lie for prenatal injuries, if justice is to be done, is an inescapable conclusion."

In 26 Tennessee Law Review, page 494 (1959) it was the opinion of Dorman Lamarr Stout, now of the Kingsport Bar, the writer of the article "Prenatal Injuries" that a viable child suffering prenatal injuries should be permitted to bring action for damages upon his surviving birth. He also quoted from Blackstone, and upon an

examination of that work it is found that he was referring to Section 129 of Lewis's Blackstone's Commentaries, Book 1, Page 117, 118 as follows:

"Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb.

*     *     *     *     *

"An infant in ventre sa mere, or in the mother's womb, is supposed in law to be born for many purposes. It is capable of having legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it; and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born."

The same article referred to the case of *Bennett v. Hymers*, 1959, 101 N.H. 483, 147 A.2d 108, 1959, in which the Court said:

"It seems to us that if an infant is born alive and survives bearing physical or mental injuries medically provable to have been incurred by it while en ventre sa mere it is being oblivious to reality to say that the mother alone was injured by the tortious act and not the child."

*Hogan v. McDaniel* cited as authority the annotation appearing in 10 A.L.R.2d 1051. There is a more recent annotation on the same subject in 27 A.L.R.2d, commencing at page 1256. The case of *Damasiewicz v. Gorsuch*, supra, was referred to. This case involved an action by an infant born prematurely and permanently blind as a result of prenatal injuries. The Court in that case said:

"By the negligence or the willful misconduct of someone an unborn child has to go through life, crippled, blind, subject to fits, an imbecile, or otherwise changed from a normal human being. * * * It is no wonder so many judges have dissented from such decisions (referring to decisions denying recovery), and that some of the latest cases have disregarded them altogether."

In 27 A.L.R.2d, supra at page 1259, the annotator said in a footnote:

"One cannot examine the cases in which a child, physically or mentally deformed for life as a result of prenatal injuries caused by the wrongful act of another, has been denied a right to recover for such injuries, without being impressed by the harshness of such a result."

We, too, believe that the rule of nonliability to a viable child, born alive, for personal injuries negligently inflicted before birth is too harsh and is contrary to that justice which the law seeks to save and promote. 2 Harper & James, The Law of Torts, Sec. 18.3, p. 1030 and Prosser, Torts Second Edition 1955, page 175 and more recent annotations and cases so hold.

The case of *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W.2d 838, 839, 10 A.L.R.2d 634, held that an unborn viable child is a person capable of existence separate from its mother and that under the Wrongful Death Statute of that State such child might have a right of action for its negligent killing. The Wrongful Death Statute of that State provides where death is caused by a wrongful act or omission of any person the personal representative of the decedent may maintain an action

therefor if he (the decedent) might have maintained an action had he lived.

Our Statute provides that the right of action which a person whose death is caused from injuries received from *another would have had against the wrongdoer in case death had not ensued* shall not be extinguished by his death, but shall pass to named beneficiaries.

It is our opinion, therefore, that the language emphasized would have permitted the infant children in these cases, had they continued to live after birth, to maintain actions for the prenatal injuries negligently inflicted upon them.

We believe the reasoning in the cases of *Keyes v. Construction Service, Inc.* and *Hall v. Murphy,* supra, and other more recent cases is logical, sound and in keeping with the proper administration of justice permitting a remedy for a wrong committed upon an innocent and helpless child.

█ Based upon our research of the authorities, and our responsibility to see that justice is done between all parties, it is our belief that a viable child receiving prenatal injuries proximately resulting from negligence of another has a cause of action conditioned only upon his being born alive. His right to prosecute his remedy for such injuries commences from the time of his live birth. We believe that sound public policy and justice requires that we so hold. The fact that there has been no such express holding in the past or that such a case might present difficulties in proof of liability or proof of causal negligence resulting in injury are not sufficient to repel the justice of permitting a remedy for such injuries.

■ Therefore, we expressly hold that a viable infant en ventre sa mere suffering injuries may, upon being born alive, prosecute an action against those negligently inflicting such injuries to recover compensation therefor. This being so, it naturally follows from 20-607 T.C.A. that when the child dies from such injuries the parent of the child may prosecute a suit for such injuries and death.

The action of the Trial Court in sustaining the demurrer is overruled and these cases are remanded for further proceedings not inconsistent with this opinion.