STATE of Tennessee, Appellee,

v.

Glenn A. EVANS, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

Aug. 13, 1987.

Permission to Appeal Denied by
Supreme Court Dec. 7, 1987.

W. J. Michael Cody, Atty. Gen. and Reporter, Albert L. Partee, III, Asst. Atty. Gen., Nashville, and Patrick McCutchen, Dist. Atty. Gen., Clarksville, for appellee.

Hugh R. Poland, Jr., Clarksville, for appellant.

Richard J. Ryan, Jr., Memphis, for amicus curiae.

## OPINION

O'BRIEN, Judge.

In a three count indictment the Montgomery County Grand Jury charged Glenn A. Evans with driving under the influence of an intoxicant; aggravated assault; and vehicular homicide under the provisions of T.C.A. § 39-1-231(b). In a jury trial he was found guilty of vehicular homicide and aggravated assault.

The central thrust of the four issues submitted is fashioned around the argument that a defendant cannot be held criminally liable under the vehicular homicide statute for the death of an unborn, viable fetus.

The convicting evidence is uncomplicated. The charges resulted from an automobile accident which occurred on 1 March 1985 when defendant, driving north in the southbound lane on Interstate Highway 24, collided head-on with another vehicle, causing serious and extensive injuries to a female passenger. This woman was approximately eight months pregnant. The evidence showed that the child was viable, that is

living. The medical proof was that the force of the impact caused a placental abruption, or a separation of the placenta from the uterus, cutting off the life support system of the 35½ week-old fetus causing death from asphyxiation. The physician attending the mother after the accident testified that the baby had a 90 to 95% likelihood of survival outside the womb at the time of the placental abruption. A police officer testified that defendant smelled of alcohol at the scene of the accident. A toxicologist report indicated defendant's blood alcohol level to be .17%, by weight, immediately after the accident.

■■■ The core issue charges that the trial judge did not follow established case law in the instructions to the jury which resulted in a jury verdict contrary to the law of Tennessee. The argument is that the words "another" "person" and "human life" as used in the Vehicular Homicide Statute, (T.C.A. § 39–2–231) are vague and indefinite to the extent they comprise a denial of due process and do not adequately inform a defendant of the charges against him.

The statute reads as follows:

"Vehicular homicide is the killing of another by the operation of an automobile, airplane, motor boat, or other motor vehicle:

(a) as the proximate result of conduct creating a substantial risk of death or serious bodily injury to a person under circumstances manifesting extreme indifference to the value of human life; or

(b) as the proximate result of the driver's intoxication as set forth in § 55–10–401.

For purposes of this section, "intoxication" shall include alcohol intoxication as defined by § 55–10–408, drug intoxication or both."

Penal statutes should be strictly construed, but the rule is not an inexorable command to override common sense and evident statutory purpose, and does not require that a statute be given the narrowest meaning; it is sufficient if words are given their fair meaning in accord with the evident intent. See *United States v. Cook*, 384 U.S. 257, 86 S.Ct. 1412, 1415, 16 L.Ed. 2d 516 (1966). We say without reservation that we do not find the ambiguity in the above words insisted upon by the defendant. The primary function of the court in construing legislation is to effectuate legislative intent, which may be ascertained from the clear language of the statute itself. Each component part of the statute must be taken in context with the whole in order to establish the legislature's reasonable intent in enactment of the statute. We find nothing mysterious about the words in question. In legal parlance a "person" in general usage is considered to be a human being (i.e. a natural person). Black's Law Dictionary, West, 5th Edition, p. 1028. We also find in this volume at p. 1029 that a work "person" as used in the Fourteenth Amendment does not include the unborn. Citing *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973). The foregoing definition is enlarged upon in the American Heritage Dictionary of the English language to describe a person as a living human being, especially as distinguished from an animal or thing. There is some variation from this definition for purpose of remedies given for personal injuries which requires discussion further on in this opinion. Apparently, as the State informs us, the terms "person" and "human life" have no judicial or statutory definition in Tennessee Criminal Jurisprudence. The role of the courts "in statutory construction is to ascertain and give effect to the intent of the legislature." *State v. Williams*, 623 S.W.2d 121, 124 (Tenn.Cr.App.1981). Obviously, when taken in context and applying a construction that will not render the terms of the statute useless the word "another" must be applied to give meaning to the remainder of the statute. See *State v. Netto*, 486 S.W.2d 725 (Tenn.1972). The word has been defined to mean an additional one or a different one of the same kind. It would give the statute a strange construction in-

deed which would render it completely useless for the purpose enacted if the term were construed to mean anything other than the life of another person or human being.

The problem which exists was created by the trial judge's instruction to the jury that a fetus may be a victim under the Vehicular Homicide Statute. This instruction was in the following words:

"In a case such as this, a fetus may be a victim under the vehicular homicide statute if you find that just prior to this alleged event, the fetus was viable. Viable means that the fetus was capable of separate existence apart from its mother."

There is no precedent in this jurisdiction for such an instruction. There are just five cases in this State which have any reference to an unborn fetus as a person. Four of these involve civil procedure and judicial interpretations of the Wrongful Death Statute. (T.C.A. § 20–5–106). The first of these is *Hogan v. McDaniel*, 319 S.W.2d 221, 204 Tenn. 235 (1958) in which it was held that an unborn viable child developed during 9½ months of pregnancy, alive and capable of existence separate and apart from its mother, was not a "person" within contemplation of the Wrongful Death Statutes. *Hogan* was followed by *Shousha v. Matthews Drivurself Service, Inc.*, 358 S.W.2d 471, 210 Tenn. 384 (1962) in which the court held that a viable unborn infant suffering injuries could, upon being born alive, prosecute an action against those negligently inflicting such injuries and the right to prosecute a suit for such injuries and death survived a child who died from the injuries inflicted. The court was careful to emphasize that they adhered strongly to the doctrine of stare decisis. While expressing their strong belief in the growth and development of the law to the end that every party who suffers a wrongful injury may have a remedy for redress, they reiterated the rule that a decision is authority for the point or points decided, and that general expressions in an opinion are to be taken in connection with the case in which they are used, and beyond that are not authority for any other case. Shortly after *Shousha* the court decided the case of *Durrett v. Owens*, 371 S.W.2d 433, 212 Tenn. 614 (1963), in which it was held there could be no recovery under the Wrongful Death Statute for death of a stillborn child delivered after an automobile accident. In *Durrett* the court confined itself to explaining the rulings in *Hogan* and *Shousha*, supra, and reaffirming the decisions in both cases. The final case under the Wrongful Death Statute is *Hamby v. McDaniel*, 559 S.W.2d 774 (Tenn.1977). In a divided opinion containing a lengthy discussion of the Wrongful Death Statute and the interpretation of an unborn child as a person, the Court concluded that a viable fetus which was stillborn was not a "person" within the meaning of the statute. In the following year the legislature added a paragraph to T.C.A. § 20–5–106 which defined the word "person" to include a fetus which was viable at the time of injury. It is reasonable to assume this amendment was motivated by the decision in *Hamby*, supra.

The amendment to the Wrongful Death Statute was enacted by Chapter 742, Sec. 1 of the Public Acts of 1978. The Vehicular Homicide Statute was enacted by Chapter 927, Sec. 1 of the Public Acts of 1978. There appears to be nothing in the legislative history to demonstrate an intent on the part of the Legislature that an unborn fetus was to be embraced within the scope of that statute. We are bolstered in that conclusion by the knowledge that the Senate sponsor in both cases was the same. To paraphrase the language of the decision in *Hamby*, supra, the Tennessee Legislature's failure to include the term "fetus" in the Vehicular Homicide Statute in conjunction with the words "another", "person" or "human life" implies an intent not to consider them synonymous. For us to rule otherwise would amount to judicial legislation.

■ The State urges us to follow the path marked by Massachusetts and South

Carolina in *Commonwealth v. Cass*, 392 Mass. 799, 467 N.E.2d 1324 (1984) and *State v. Horne*, 282 S.C. 444, 319 S.E.2d 703 (1984), respectively. In *Cass* the court construed its Vehicular Homicide Statute on the basis of a prior decision of that court, *Mone v. Greyhound Lines, Inc.*, 368 Mass. 354, 331 N.E.2d 916 (1975) in which they determined for the purpose of their Wrongful Death Statute that there was "neither reason nor logic in choosing live birth over viability" and that "conditioning a right of action on whether a fatally injured child is born dead or alive is not only an artificial and unreasonable demarcation, but unjust as well." In *Cass* they concluded that "[a]n offspring of human parents cannot reasonably be considered to be other than a human being, and therefore a person, first within, and then in normal course outside, the womb." *Horne* was an action for common law homicide based on killing of an unborn child as opposed to a vehicular homicide case. The court ruled that a criminal action could be maintained when the State could prove beyond a reasonable doubt that the fetus involved was viable, i.e., able to live separate and apart from its mother without the aid of artificial support. In each case the court held that their decisions would be given prospective effect only.

The foregoing cases are the only two brought to our attention in which facts and circumstances involved are similar in any way to those in the case sub judice. Our own research indicates that several of our sister States have enacted legislation defining the status of a fetus for the purpose of their penal codes. The majority of these involve abortion statutes although a lesser number deal with injury and/or homicide involving a fetus in criminal vehicular operation. In a statute generally similar to the Tennessee vehicular homicide law the State of Minnesota established a specific penalty for the death or injury to an unborn child. The statute in Utah is more general, including an unborn child as a possible victim in their criminal homicide statute. Several states have upheld criminal convictions for the homicide of an unborn infant, including Mississippi, Illinois (born alive), California, New Jersey (born alive), Oklahoma, and Florida. The majority of these judgments are based on construction of statutory law which has been enacted in fairly recent years. Although the trend seems to be growing toward more liberal construction of homicide statutes, the vast number of States continue to abide by the old Common Law Homicide definition which excludes an unborn fetus as a person, viable or otherwise.

A brief amicus curiae of an ad hoc committee of Tennessee physicians, filed with permission of the court, presents the argument that the common law rule "that a human being must be born alive to be the subject of homicide" is a rule of evidence mandated because the primitive nature of medicine at common law prevented proof that a child in utero was alive unless it was physically observed to be so outside the womb. It is earnestly insisted that current advances in medical science have eliminated the only reason for which the "born alive rule" was created and the rule no longer can be rationally applied. This argument is bolstered by references to a host of medical writings on the subject documenting the theory that the "born alive rule" has outlived its usefulness. We cannot adopt this argument. Our courts have recognized for many years that the common law is not entirely stationary, and may be modified and extended by analogy, construction and custom, so as to embrace new relations, springing up from time to time due to changes in society. See *Jacob v. State*, 22 Tenn. 372, 389 (1842); *Box v. Lanier*, 112 Tenn. 393, 408 (1903). However, in the only case we have found dealing directly with a criminal charge for the homicide of an unborn infant, *Morgan v. State*, 256 S.W. 433, 148 Tenn. 417 (1924), our Supreme Court specifically said that in the absence of a statute dealing with the subject the State was bound by the common law definition of a reasonable creature in being and that an unborn child could not be the subject of homicide until it has an

existence independent of its mother. While it may be true, as Amici suggest, that medical evidence today can clearly establish the corpus delicti of the unborn child in this case, this is a matter which lends itself to action by the legislature.

Other issues raised by the defendant are inextricably involved with that we have discussed heretofore. Defendant's issue pertaining to denial of motions for acquittal is rooted in his insistence that the vehicular homicide statute is unconstitutionally vague. We have ruled otherwise and this issue is without merit. The charge that Count 3 of the indictment was tainted by denial of a dismissal of Count 4 has no merit. It is argued that there should have been no testimony regarding the termination of the pregnancy of the woman whose injuries in the accident were the basis for the charge of aggravated assault. These charges arose from the same criminal episode and were based on the same criminal conduct of the defendant. We are of the opinion they should have been joined in the same indictment in accordance with Tenn.R.Crim.P. 8(a). Although there was a pretrial motion to dismiss the vehicular homicide charge there was no motion for severance of the aggravated assault charge and we consider this a waiver of this issue on the part of the defendant. See *State v. Estes*, 655 S.W.2d 179, 182 (Tenn.Cr.App.1983).

Defendant's complaint in reference to the jury instructions also applies to the vehicular homicide judgment and has been resolved by our reversal of the judgment for that offense.

■ The proof was adequate to sustain the conviction for aggravated assault and the judgment on that offense is affirmed. The judgment for the offense of vehicular homicide is reversed and dismissed for the reasons set forth in this opinion.

BYERS, J., and JAMES BEASLEY, Special Judge, concur.