IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 29, 2023 Session

## CLAYTON D. RICHARDS v. VANDERBILT UNIVERSITY MEDICAL CENTER

**Appeal from the Circuit Court for Davidson County**
**No. 21C184   Thomas W. Brothers, Judge**

_____

**No. M2022-00597-COA-R3-CV**
_____

J. STEVEN STAFFORD, P.J., W.S., concurring.

Although I ultimately agree with the majority's conclusion, I write this separate concurrence to express my concerns with the result in this case.

To recap, Mr. Richards filed his first complaint in 2014, relying on the 120-day extension to the statute of limitations under the Tennessee Health Care Liability Act ("the THCLA"). Mr. Richards eventually voluntarily dismissed his first complaint in 2019. Relying once again on the 120-day extension provided by Tennessee Code Annotated section 29-26-121, Mr. Richards refiled his case in 2021. The question, then, is whether Mr. Richards is entitled to the benefit of a second 120-day extension in his refiled action.

In order to resolve this issue, we are tasked with interpreting section 29-26-121. As such, our analysis is guided by the familiar rules of statutory construction. Of paramount importance are the words employed by the legislature. *See **Mills v. Fulmarque, Inc.***, 360 S.W.3d 362, 368 (Tenn. 2012). We interpret those words based on "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id.* (citing **Lee Med., Inc. v. Beecher**, 312 S.W.3d 515, 526 (Tenn. 2010)). When ambiguous, we may look beyond the statutory text, including public policy and "the background and purpose of the statute"; however, external sources cannot provide a basis for departing from the clear statutory language. *Id.* In interpreting a statute, we must endeavor to not render any part of the statute ambiguous, **Young v. Frist Cardiology, PLLC**, 599 S.W.3d 568, 571 (Tenn. 2020), while also being cautious not to apply an interpretation that yields an absurd result. **Seals v. H & F, Inc.**, 301 S.W.3d 237, 251 (Tenn. 2010) (citing **State v. Flemming**, 19 S.W.3d 195, 197 (Tenn. 2000)). Still, the absurdity doctrine may not be used to invalidate clear statutory language simply because the result is "unpleasant or peculiar." *Id.* (noting that the doctrine should therefore be used

"sparingly").

The majority opinion correctly concludes that the previous cases to consider this issue are inapposite to the current dispute. First, in *Rajvongs v. Wright*, the Tennessee Supreme Court held that in order to effectuate the purpose of the THCLA, it was unable to conclude that the General Assembly would require transitional plaintiffs to bear the burden of the THCLA pre-suit notice requirement without providing them with the corresponding benefit of the 120-day extension. 432 S.W.3d 808, 813–14 (Tenn. 2013). Our high court reached this result on the basis of the "statutory scheme in its entirety," despite the fact that the language of section 29-26-121 provided no explicit reference to the savings statute. *Id.* But the holding of *Rajvongs* was clearly limited to "transitional plaintiffs"—that is, those who filed their first complaint before the enactment of the THCLA's notice requirement and therefore were utilizing their first 120-day extension when they refiled their action utilizing the savings statute. *Id.*

This Court came closer to answering the question presented in this appeal in *Tinnel v. E. Tennessee Ear, Nose, & Throat Specialists, P.C.*, No. E2014-00906-COA-R3-CV, 2015 WL 791625 (Tenn. Ct. App. Feb. 25, 2015). In that case, the plaintiff was not a transitional plaintiff because her first complaint was filed under the precursor to the THCLA. *Id.* at *1. The plaintiff provided pre-suit notice as required, but filed her initial complaint within one year of the accrual of her cause of action without reliance on any extension provided by statute. The case was eventually nonsuited and refiled; this time, the plaintiff relied on the 120-day extension to extend the savings statute as applied by the *Rajvongs* court. The defendants argued that this reliance was misplaced because the plaintiff was not a transitional plaintiff and that the plaintiff "had already availed herself of the 120-day extension" because she "automatically received the extension when she filed the initial complaint." *Id.* at *3, 4.

The Court of Appeals disagreed. First, the Court cited a recent case from the Tennessee Supreme Court that held that because the filing of a second case under the savings statute instituted a "new and independent action," a second set of pre-suit notice documents was required upon the refiling of the case. *Id.* at *5 (quoting *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015)). Based on the reasoning in *Rajvongs*, the *Tinnel* panel concluded that because the plaintiff was burdened by the pre-suit notice requirements of the THCLA, she should also benefit from the 120-day extension. *Id.* ("Like the Supreme Court reasoned in *Rajvongs,* we are unable to conclude that the General Assembly would require plaintiffs to provide pre-suit notice before refiling under the saving statute and yet deprive them of the 120-day extension.").

But as the majority correctly notes, the *Tinnel* opinion did not discuss the language central to VUMC's argument here—Tennessee Code Annotated section 29-26-121(c)'s prohibition against applying "more than one (1) extension . . . to any provider." Of course, "it is axiomatic that judicial decisions do not stand for propositions that were neither raised

by the parties nor actually addressed by the court." ***Staats v. McKinnon***, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) (citing ***Shousha v. Matthews Drivurself Serv., Inc.***, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962)). So, in addition to not being controlling on this Court, *see* Tenn. Sup. Ct. R. 4(G)(1), the ***Tinnel*** opinion simply does not analyze the central argument that has been presented in this case.[1]

Thus, it appears that this is the first case to explicitly analyze whether section 29-26-121(c) requires a different result than the one reached by the ***Rajvongs*** court where a non-transitional plaintiff is attempting to utilize the 120-day extension for a second time with the same provider. Mr. Richards argues that a different result is not required because the second action is "new and independent" and therefore not tied to the earlier action. ***Foster***, 467 S.W.3d at 916. In the general sense, I agree that an action that has been nonsuited has not been decided on the merits and that the nonsuit places the parties "in their original positions prior to the filing of the suit." ***Himmelfarb v. Allain***, 380 S.W.3d 35, 40 (Tenn. 2012). This Court has held that this essentially means that a nonsuit "leaves the parties 'as if no action had been brought at all.'" ***Justice v. Craftique Constr., Inc.***, No. E2019-00884-COA-R3-CV, 2021 WL 142146, at *3 (Tenn. Ct. App. Jan. 15, 2021) (quoting 27 C.J.S. *Dismissal and Nonsuit* § 11 (2020)); *see also* ***Jasinskis v. Cameron***, No. M2019-01417-COA-R3-CV, 2020 WL 2765845, at *6 (Tenn. Ct. App. May 27, 2020) ("The [plaintiffs'] nonsuit of all of their claims against [the defendant] and the trial court's order that the claims were dismissed without prejudice placed the parties back where they were before the [plaintiffs] filed their lawsuit against [the defendant] . . . ." (citing ***Himmelfarb***, 380 S.W.3d at 40)). *But see* ***Reliance Ins. Co. v. Mackey***, No. M2003-03106-COA-R3-CV, 2004 WL 2636706, at *4 (Tenn. Ct. App. Nov. 18, 2004) ("The [voluntary] dismissal does not vitiate the fact that the action was commenced.").

However, in giving plaintiffs the benefit of the 120-day extension, the Tennessee General Assembly included one relevant limitation: that "[i]n no event" shall "more than one (1) extension be applicable to any provider." Tenn. Code Ann. § 29-26-121(c). VUMC argues that the natural and ordinary meaning of this language must be interpreted to prohibit a plaintiff from utilizing the extension more than once as to any one provider. And because Mr. Richards utilized the extension in filing his first action against VUMC, he cannot benefit from the extension a second time.

At oral argument, Mr. Richards argued that VUMC's interpretation was not the only reasonable interpretation of the statute. Instead, he asserted that section 29-26-121's limitation should be read as prohibiting a plaintiff from using the extension more than once

---

[1] It is tempting to conclude that the ***Tinnel*** panel felt no need to consider the above language because the ***Tinnel*** plaintiff did not actually *utilize* "more than one (1) extension" despite the argument of the defendant to the contrary. Tenn. Code Ann. § 29-26-121(c). Again, the first complaint in ***Tinnel*** was filed within the applicable statute of limitations without the need for any extension thereon. However, the ***Tinnel*** panel specifically stated that it broadly "reject[ed] [the] [d]efendants' argument that [the] [p]laintiff was only entitled to the use of one extension." *Id.* at *5.

in any single action. He further argued that this interpretation aligns with what he characterized as **Rajvongs**' holding that the pre-suit notice requirements and the 120-day extension are "conjoined twins" that must both be applicable in order to effectuate the purpose of the THCLA. To hold otherwise, Mr. Richards asserted, would be absurd. He also argued that VUMC's interpretation improperly shortens the limitations period provided by the savings statute, in violation of **Rajvongs** and section 29-26-121. *See* Tenn. Code Ann. § 29-26-121(c) ("In no event shall this section operate to shorten or otherwise extend the statutes of limitations or repose applicable to any action asserting a claim for health care liability[.]").

After careful consideration, I am compelled to agree with VUMC. As an initial matter, the holding in **Rajvongs** was not based on any concern about shortening the statute of limitations. In fact, the **Rajvongs** opinion makes clear that a savings statute is not a statute of limitations. **Rajvongs**, 432 S.W.3d at 813 ("We have long recognized that the saving statute is not a statute of limitations or a statute of repose and that it operates independently." (citations omitted)). So the express prohibition contained in section 29-26-121(c) regarding shortening the statute of limitations or repose is entirely inapposite here.

Additionally, it appears that Mr. Richards' chosen interpretation of section 29-26-121(c) violates a cardinal rule of statutory interpretation: "[j]ust as we may not overlook or ignore any of the words in a statute, we must be circumspect about adding words to a statute that the General Assembly did not place there." **Coleman v. State**, 341 S.W.3d 221, 241 (Tenn. 2011) (citing **In re C.K.G.**, 173 S.W.3d 714, 722 (Tenn. 2005); **City of Knoxville v. Entm't Res., LLC**, 166 S.W.3d 650, 658 (Tenn. 2005)). Here, the parties' positions can be summarized as follows: VUMC interprets section 29-26-121 as prohibiting a plaintiff from using more than one extension per provider; Mr. Richards interprets section 29-26-121(c) as prohibiting more than one extension per provider per action. Clearly, this interpretation adds additional words to section 29-26-121(c) that were not included by our legislature.

The 120-day extension at issue in this case, moreover, is a creature of statute. And what the legislature gives, it can take away. *Cf.* **Officer v. Young**, 13 Tenn. 320, 322–23 (Tenn. 1833) (discussing the limits on the legislature's power to give away and take away when dealing with vested rights). Although the General Assembly has given plaintiffs a 120-day extension, it is fair to say that the THCLA has done a fair amount more taking away from plaintiffs than giving. *See, e.g.*, **Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.**, 549 S.W.3d 77, 79 (Tenn. 2018) (dismissing a claim under the THCLA because the defendant provider did not receive the statutory pre-suit notice, even though the provider had actual notice of the claim); **Webb v. Trevecca Ctr. for Rehab. & Healing, LLC**, No. M2019-01300-COA-R3-CV, 2020 WL 6581837, at *1 (Tenn. Ct. App. Nov. 10, 2020) (dismissing a complaint under the THCLA because the plaintiff's pre-suit notice letter was directed toward the provider's administrator, rather than the provider, a rehabilitation facility); **Shaw for Est. of Suttle v. Gross**, No. W2019-01448-COA-R3-CV, 2021 WL 1388007, at *1 (Tenn. Ct. App. Apr. 13, 2021) (dismissing a claim under the THCLA

because the plaintiff did not substantially comply with the requirement to provide a HIPAA-compliant authorization); *Moore-Pitts v. Bradley*, 605 S.W.3d 24 (Tenn. Ct. App. 2019) (same); *Rush v. Jackson Surgical Assocs. PA*, No. W2016-01289-COA-R3-CV, 2017 WL 564887 (Tenn. Ct. App. Feb. 13, 2017) (same); *Shockley v. Mental Health Coop., Inc.*, 429 S.W.3d 582 (Tenn. Ct. App. 2013) (dismissing a claim under the precursor to the THCLA because the plaintiff sent pre-suit notice to the Mental Health Cooperative Foundation, Inc, rather than the actual provider the Mental Health Cooperative, Inc., even though the entities were related and had the same agent for service of process); *see also* Ashley D. McGhee, Comment, *Evaluating the Performance of the Tennessee Health Care Liability Act*, 20 Transactions: Tenn. J. Bus. L. 971, 974 (2019) (discussing the number of cases dismissed for "failing to overcome significant procedural complexities that require complete compliance in order to earn the 120-day extension").

It can scarcely be argued that requiring a plaintiff to shoulder the burden of pre-suit notice when refiling a lawsuit without also conferring on that plaintiff the benefit of the extension is a harsh, unfair result. Such a rule also bears very little relationship to the stated purpose of the THCLA "to reduce the number of frivolous lawsuits filed in Tennessee[.]" *Henderson v. Vanderbilt Univ.*, 534 S.W.3d 426, 449 (Tenn. Ct. App. 2017) (internal quotation marks and citation omitted); *see also Buckman v. Mountain States Health All.*, 570 S.W.3d 229, 241 (Tenn. Ct. App. 2018) (Swiney, J., concurring) (asking the legislature to amend the THCLA to eliminate the "unintended consequence" where cases are dismissed "for technical reasons without any decision ever being made as to the possible merits of the case"), *abrogated by Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322 (Tenn. 2020). But Tennessee courts have repeatedly recognized the harsh results that often ensue from the application of the THCLA. *See, e.g.*, *Bidwell ex rel. Bidwell v. Strait*, 618 S.W.3d 309, 322 (Tenn. 2021) ("While this leads to harsh results for the Plaintiff, had the General Assembly intended for noncompliance with section 29-26-121(a)(5) to excuse a plaintiff from providing pre-suit notice, it could have said so."); *Mills v. Wong*, 155 S.W.3d 916, 925 (Tenn. 2005) ("Although a rule which extinguishes medical malpractice rights of action even though a plaintiff was mentally incompetent may be harsh, it is fully within the constitutional power of the legislature so to provide, and thus it is not our place to debate its wisdom.").

These concerns, however, do not allow me to depart from the result reached by my colleagues. Importantly, "unless the General Assembly's decision runs afoul of either the state or federal constitutions, this Court must decline to interfere, even when the General Assembly's decision produces harsh results." *Pigg v. Barge, Waggoner, Sumner & Cannon*, No. 87-161-II, 1988 WL 92523, at *4 (Tenn. Ct. App. Sept. 9, 1988) (citing *Harrison v. Schrader*, 569 S.W.2d 822, 828 (Tenn. 1978) ("Undeniably some hardship results from the application of this statute, but it is not the role of this Court to pass upon the wisdom or lack thereof of the legislation under review.")). For better or worse, a harsh result does not necessarily equate to an absurd result. *Cf.* 2A *Sutherland Statutory Construction* § 46:1 (7th ed.) ("Courts may apply the plain meaning rule even though it

produces a harsh or unjust result, or a mistaken policy, as long as the result is not absurd."). And while the **Rajvongs** court was free to consider the purpose of the THCLA as a whole in light of the legislative silence as to transitional plaintiffs, this situation is governed by a clear statutory directive prohibiting the use of the 120-day extension more than once as to any provider. *See Mills*, 360 S.W.3d at 368 (noting that we may generally only consider public policy related to the "the background and purpose of the statute" if the statute is ambiguous).

Mr. Richards has not argued that the Tennessee General Assembly lacked the power to impose a burden on him without bestowing him with some corresponding benefit. And we must presume that the legislature was aware of both the savings statute and the state of the law surrounding it when enacting section 29-26-121(c). **Wilson v. Johnson Cnty.**, 879 S.W.2d 807, 810 (Tenn. 1994). We therefore must apply the language as written notwithstanding any concern that the result is harsh or undesirable. *See Watts v. Putnam County*, 525 S.W.2d 488, 492–93 (Tenn. 1975) (finding that claims were time-barred under the construction defect statute, and noting that although the result was "harsh" and perhaps "undesirable," it was "demanded under the statutory scheme").

In sum, Mr. Richards utilized the 120-day extension when he filed his initial action in 2014 against VUMC. In its legislative prerogative, the Tennessee General Assembly has chosen to bestow the 120-day extension only once as to any particular provider. Consequently, Mr. Richards may not utilize the extension a second time against VUMC. In assuming that the benefit of the THCLA followed its burden in this situation, Mr. Richards has fallen into a trap laid by the maze of procedural requirements that make up the THCLA, and his claim is untimely as a result. Mr. Richards therefore joins the ranks of many plaintiffs in Tennessee whose claims have been felled by the procedural hurdles of the THCLA without consideration of their merits. *See Buckman*, 570 S.W.3d at 241 (Swiney, J., concurring) (calling for the THCLA to be amended nearly five years ago to correct the unintended consequences of the act, but noting that it was possible that "our General Assembly intended in enacting these healthcare liability statutes for some Tennessee citizens to have their healthcare liability actions resolved not on the merits but instead by means of technical traps"). As such, although I welcome a contrary conclusion from the Tennessee Supreme Court, I must reluctantly agree with my learned colleagues as to the result in this case.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 6 -