IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 11, 2015 Session

# DERRICK HUSSEY, ET AL. v. MICHAEL WOODS, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00564209     Donna M. Fields, Judge**

_____

**No. W2014-01235-COA-R3-CV – Filed September 23, 2015**
_____

This is an appeal from the denial of Appellant's Tennessee Rule of Civil Procedure 60.02 motion to set aside a settlement reached by Appellee, the decedent's mother, in the underlying wrongful death lawsuit. Appellant brought the Rule 60.02 motion on behalf of her minor child, who was born out of wedlock. The decedent had executed a voluntary acknowledgment of paternity of the minor child in Mississippi; Appellant argued that the acknowledgment was entitled to full faith and credit in Tennessee such that the child would be the rightful plaintiff in the wrongful death lawsuit. Appellee filed a challenge to paternity, arguing that the decedent was incarcerated at the time of the child's conception. The Circuit Court stayed all proceedings and transferred the question of paternity to the Probate Court, which had no authority to enroll the foreign acknowledgment of paternity under the Uniform Enforcement of Foreign Judgments Act. Furthermore, because the child's paternity was challenged, there was a question as to whether the mere filing of the VAP in a Tennessee Court, pursuant to Tennessee Code Annotated Section 24-7-113(b)(3), was sufficient to establish paternity for purposes of the Wrongful Death Statute. If there is a challenge to the VAP, Tennessee Code Annotated Section 24-7-113(e) requires the trial court to first find that there is a substantial likelihood that fraud, duress, or material mistake of fact existed in the execution of the VAP. If the court so finds, then, under Tennessee Code Annotated Section 24-7-113(e)(2), DNA testing is required to establish paternity. Alternatively, the trial court could find that there is not a substantial likelihood of fraud, duress, or material mistake, deny the challenge to the VAP, and enroll the VAP as conclusive proof of paternity. Here, the trial court made no finding concerning fraud, duress, or material mistake under Section 24-7-113(e). Despite the fact that the court never resolved the paternity question, it, nonetheless, denied Appellant's Rule 60.02 motion and granted attorney's fees to the defendant in the underlying wrongful death action and to the Appellee/mother for Appellant's alleged violation of the order staying all proceedings in the Circuit Court. We conclude that the Rule

60.02 motion was not ripe for adjudication until such time as the trial court conclusively established the child's paternity under either Tennessee Code Annotated Section 24-7-113 or 24-7-112. Accordingly, we vacate the trial court's order denying Rule 60.02 relief and remand the case for further proceedings, including, but not limited to, entry of an order that complies with Section 24-7-113(e). We reverse the award of attorney's fees and the order staying proceedings in the Circuit Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated in Part; Reversed in Part; and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Rachel E. Putnam, and Austin T. Rainey, Memphis, Tennessee, for the appellant, Sharondra E. Harris.

Van D. Turner, Jr., Memphis, Tennessee, for the appellee, Estate of Mae L. Chearis.

Kevin D. Bernstein, Betty Ann Milligan, and Bradford Jones Spicer, Memphis, Tennessee, for the appellee, Family Dollar Stores of Tennessee, Inc.

Richard Glassman, Edwin E. Wallis, III, and William C. Terrell, II, Memphis, Tennessee, for the appellees, Porter & Strange, PLLC, Amanda K. Strange, and Matthew V. Porter.

JoeDae L. Jenkins, Memphis, Tennessee, Pro Se.

**OPINION**

**I. Background**

On April 28, 2005, Appellant Sharonda E. Harris gave birth to Darrius C. Harris. Darrius was born out of wedlock; however, on March 12, 2008, Derrick Hussey ("Decedent") executed a "Stipulated Agreement of Support and [Voluntary] Admission of Paternity" ("VAP") in the Chancery Court of Desoto County, Mississippi. Therein, Mr. Hussey acknowledged that he was Darrius' natural father, and the Mississippi court entered an order for child support.

2

On December 4, 2008, Mr. Hussey died intestate after he was allegedly detained and questioned by Michel Woods, an employee of Appellee Family Dollar Stores of Tennessee, Inc., d/b/a Family Dollar Store ("Family Dollar").[1]     On December 3, 2009, Decedent's mother, Mae L. Chearis, as Decedent's next of kin, filed a wrongful death action on behalf of the Decedent against Mr. Woods and Family Dollar.  Appellees Amanda K. Strange, Matthew V. Porter, and the law firm of Porter & Strange represented Ms. Chearis in the lawsuit.  Family Dollar and Ms. Chearis ultimately settled the wrongful death action, and the trial court entered a consent order of dismissal with prejudice on March 31, 2010.

On December 2, 2011, some twenty months after the entry of the March 31, 2010 order of dismissal, Ms. Harris, as the natural parent and guardian of Darrius Harris, filed a motion to set aside the consent order of dismissal and to substitute Darrius as the proper plaintiff in the wrongful death lawsuit.  In her motion, Ms. Harris alleged, *inter alia*, that "pursuant to the Tennessee Wrongful Death Statute, [Darrius,] the minor child of Decedent would stand as the lawful beneficiary in priority over the natural mother of the Decedent, Mae L. Chearis . . . ." Ms. Harris' motion states that "because the original action was commenced by the improper beneficiary in terms of priority under the Tennessee Wrongful Death Statute, namely, the Decedent's natural mother rather than his natural child," the trial court "should set aside the Consent Order of Dismissal pursuant to Rule 60 of the Tennessee Rules of Civil Procedure."  In addition to Tennessee Rule of Civil Procedure 60, Ms. Harris also argued that Tennessee Rule of Civil Procedure 15.03 should allow Darrius to be substituted as the proper party plaintiff in the wrongful death action.  In support of her motion, Ms. Harris attached the VAP that Mr. Hussey had allegedly executed in the Desoto County court.

On January 3, 2012, the trial court entered an order enjoining Ms. Chearis from "spending, concealing, or in any way disposing of remaining settlement proceeds."  On January 4, 2012, Family Dollar filed its response in opposition to Ms. Harris' motion to set aside the consent order of dismissal, wherein it argued, *inter alia*, that Rule 60 was inapplicable, that Ms. Harris' motion was not timely filed, and that substitution of the minor child would prejudice Family Dollar.

On January 13, 2012, Ms. Harris filed a copy of the Mississippi VAP in the Circuit Court.  In addition to the VAP, Ms. Harris also filed two orders, both entered on April 2,

---

[1] The particular facts surrounding the Decedent's death are not relevant to the instant appeal. Furthermore, the settlement of the underlying wrongful death action was subject to a confidentiality provision, whereby Ms. Harris agreed "not to disclose the details of this Release and Settlement . . . including the nature or amount paid and the reasons for the payment . . . ."  For these reasons, we will not discuss the specific facts that led to Mr. Hussey's death.

2008 in the Desoto County Chancery Court. The first order approved the VAP. The second order established the amount of child support; the order on child support was later amended by the Desoto County court's order of July 22, 2008.

On February 21, 2012, Ms. Chearis filed her response in opposition to the motion to set aside the consent order of dismissal. Therein, Ms. Chearis argued that Ms. Harris' motion was not only untimely, but that it should also be denied because Ms. Harris, while fully aware of the one year statute of limitations on the wrongful death action, took no steps to file the lawsuit on behalf of the minor child. Ms. Chearis also averred that "it was biologically impossible for the [D]ecendent, Derrick Hussey, to be the father of the minor child as he was incarcerated at the time he would have been able to conceive the child with Harris based on the date of birth of the minor child." In support of her response, Ms. Chearis filed her affidavit, wherein she stated that she and Ms. Harris had initially consulted Attorney Robert Brannon concerning the possibility of filing a wrongful death action. According to Ms. Chearis' affidavit, during the course of the consultation, the question of Darrius' paternity arose, and Ms. Harris refused to submit to DNA testing. Ms. Chearis further stated that, after the question of paternity arose, Ms. Harris cut off all communication. Mr. Brannon ultimately declined to represent either Darrius or Ms. Chearis in the wrongful death action, and Ms. Chearis retained Porter & Strange to file the lawsuit. In her affidavit, Ms. Chearis stated that, "[w]hen consulting with Porter & Strange, [she] expressed [her] doubts about Derrick's child because [Derrick] was incarcerated at the time the child would have been [conceived]."

On April 18, 2012, Ms. Chearis filed a motion for an order requiring DNA testing. On June 15, 2012, Ms. Harris filed a response in opposition to Ms. Chearis' motion for DNA testing. Therein, Ms. Harris stated that the VAP "is entitled to be given full faith and credit" in Tennessee. On August 9, 2012, Ms. Harris filed a request for a status conference. Therein, she argued that because Decedent's estate had been opened in the Shelby County Probate Court, the Probate Court was the proper court to decide the issues that were raised in the trial court. On September 25, 2012, the trial court entered an order denying Ms. Harris' motion for status conference and staying further proceedings in the Circuit Court pending further orders of the Probate Court. This order provides, in relevant part, as follows:

> [T]he Probate Court of Shelby County has original and exclusive jurisdiction of all matters regarding the determination and priority of heirs in an intestate estate. Accordingly, this matter shall be transferred to the Probate Court of Shelby County for the appointment of an administrator of the Estate and for determination and priority of heirs in the intestate estate of Derrick Hussey, and all matters in this Court are stayed pending final order from the Probate Court. Further, this Court's position is that the parties should agree to DNA

testing as it is the Court's opinion that a DNA test would conclusively settle and determine the rightful heirs and the priority of heirs in the estate of Derrick Hussey. Furthermore, the Court notes that while [Ms. Chearis] has agreed to a DNA test and rendered a sample of her DNA for testing, Sharonda E. Harris has refused testing.

Ms. Chearis died intestate on September 5, 2012. On December 19, 2012, Ms. Harris filed a suggestion of death and a motion for revivor and substitution of parties in the Circuit Court. Therein, Ms. Harris requested that the trial court substitute Appellee JoDae Jenkins, in his capacity as Administrator of the Estate of Mae L. Chearis (the "Estate of Mae L. Chearis"), in Ms. Chearis' place. On January 25, 2013, the trial court entered a consent order of revivor and substitution of parties.

Prior to filing her motion for revivor and substitution of parties, on or about December 20, 2012, Ms. Harris' lawyer filed a subpoena for Ms. Chearis' bank records, from November 1, 2009 to present. Allegedly, this subpoena was filed in an effort to determine where the proceeds from the wrongful death settlement had gone. In response to the subpoena, on December 26, 2012 and December 28, 2012, the Estate of Mae L. Chearis and Family Dollar, respectively, filed motions to quash the subpoena, citing the trial court's September 25, 2012 order staying further proceedings in the Circuit Court. On January 2, 2013, the trial court held a conference by telephone. During this hearing, Ms. Harris' lawyer indicated that she would withdraw the subpoena. On January 18, 2013, Family Dollar filed a motion for attorney's fees, wherein it sought to recoup the fees it had expended in filing and arguing the motion to quash the subpoena. Likewise, on January 28, 2013, the lawyer for the Estate of Mae L. Chearis filed a motion to recover attorney's fees related to the bank subpoena. Ms. Harris opposed both motions for attorney's fees.

On July 25, 2013, Ms. Harris filed a notice of the filing of the transcript of the March 27, 2013 proceedings in the Shelby County Probate Court. In relevant part, the transcript indicates that the Probate Court opened Mr. Hussey's estate on October 24, 2012 and ordered DNA testing to determine Darrius' paternity. On November 15, 2012, Ms. Harris filed a motion to reconsider DNA testing, in which she argued that the Probate Court should determine paternity based on the Desoto County VAP. On November 27, 2012, the Probate Court entered an order for DNA testing, requiring Ms. Harris and Darrius to provide DNA samples. However, this order was stayed pending resolution of Ms. Harris' motion to reconsider.

In ruling on Ms. Harris' motion to reconsider, which the Probate Court determined was, in fact, a motion to alter or amend the November 27, 2012 order requiring DNA testing, the Probate Court stated that "the issue of parentage is before the Court. . . . The issue before

5

the Court is in what manner should parentage be established by this Court in this case so as to determine the priority of heirs." In the Probate Court hearing, Ms. Harris argued that paternity was established by the prior adjudication in the Mississippi court and that the order of the Mississippi court should be given full faith and credit. The Probate Court ultimately determined that it had authority to enroll a properly authenticated judgment of the Mississippi court but concluded that the documents filed in the Probate Court purporting to be authenticated copies of the Mississippi ruling were not authenticated because the documents "did not contain a page with the order provisions and the signature of the judge, the attorneys, and the parties." Therefore, the Probate Court reserved ruling "until a complete copy of the Mississippi Court order certified by the Act of Congress" was filed.

On April 5, 2013, Ms. Harris filed the complete and authenticated Desoto County documents. Thereafter, by order of October 1, 2013, the Probate Court granted Ms. Harris' motion to alter or amend the previous order requiring DNA testing. The October 1, 2013 Probate Court order also enrolled the Mississippi adjudication of paternity and gave full faith and credit to that judgment. The Probate Court entered a second order on December 19, 2013; the order states, in relevant part, that "IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED, that Darrius Harris, is hereby determined to be the only living child of the decedent, Derrick Hussey, is the sole beneficiary of the estate of Derrick Hussey pursuant to T.C.A. §31-2-104, and has priority before all other heirs." Ms. Harris filed this order in the Circuit Court. By order of November 14, 2014, this Court held that the December 19, 2013 Probate Court order would be part of the record on appeal; however, we noted in our order that the trial court did not consider this order in ruling on Ms. Harris' motion to set aside.

After the Circuit Court granted Ms. Harris' motion for revivor, on April 22, 2014, Porter & Strange, Amanda Strange, and Matthew Porter filed a motion to intervene in the Circuit Court proceedings. The motion was granted by order of May 27, 2014. On May 2, 2014, the Circuit Court heard the pending motions, i.e., Ms. Harris' motion to set aside the consent judgment and the two motions for attorney's fees. On May 30, 2014, the Circuit Court entered three orders. The first order denied Ms. Harris' motion to set aside the consent order of dismissal of the wrongful death lawsuit filed by Ms. Chearis and/or to substitute the minor child as a party thereto. The second order granted Ms. Chearis' estate $1,400.00 in attorney's fees. The third order granted Family Dollar's motion for attorney's fees in the amount of $712.50. Ms. Harris filed a timely notice of appeal. Specifically, she appeals the three May 30, 2014 orders and the September 25, 2012 order denying Ms. Harris' motion for status conference and staying further proceedings in the Circuit Court pending further orders of the Probate Court.

6

## II. Issues

Ms. Harris raises four issues for review as stated in her brief:

1. Did the trial court err in denying minor child's motion to set aside in light of the Probate Court's order establishing the minor child as the sole heir of Decedent?

2. Did the trial court err in awarding [Family Dollar and the Estate of Mae L. Chearis'] attorney fees?

3. Did the trial court err in granting Porter & Strange's Motion to Intervene?

4. Should this Honorable Court award Minor Child appellate attorney's fees and costs.

Appellee Family Dollar also asks for its appellate attorney's fees and costs.

Concerning Issue 3, i.e., whether the trial court erred in allowing Porter & Strange to intervene, on August 11, 2015, this Court entered a stipulation of dismissal as to intervenors-appellees Amanda Strange, Matthew Porter and Porter & Strange, PLLC. With the entry of this order, the third issue was rendered moot. We now turn to address the remaining issues.

## III. Standard of Review

Tennessee Rule of Civil Procedure 60.02 states, in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

7

Relief under this rule is considered "an exceptional remedy." ***Nails v. Aetna Ins. Co.***, 834 S.W.2d 289, 294 (Tenn. 1992). The function of the rule is to "strike a proper balance between the competing principles of finality and justice." ***Banks v. Dement Constr. Co., Inc.***, 817 S.W.2d 16, 18 (Tenn.1991) (quoting ***Jerkins v. McKinney***, 533 S.W.2d 275, 280 (Tenn.1976)). "Rule 60.02 is meant to be used only in those few cases that meet one or more of the criteria stated." ***Toney v. Mueller Co.***, 810 S.W.2d 145, 146 (Tenn.1991).

We review a trial court's decision to grant or deny relief pursuant to Rule 60.02 under the abuse of discretion standard of review. ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003). Under this standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***Id***. (internal citations omitted). Under the abuse of discretion standard, the appellate court may not substitute its judgment for that of the trial court. ***Id***. (internal citations omitted). Furthermore, our Supreme Court emphasizes that great deference is given to the trial court when reviewing its decision to grant or deny relief pursuant to Rule 60.02. ***Henry***, 104 S.W.3d at 479.

To the extent that our analysis requires statutory construction, our review is de novo, with no presumption of correctness. ***State v. Wilson***, 132 S.W.3d 340, 341 (Tenn.2004) ("Statutory interpretation is a question of law, which we review de novo, with no presumption of correctness."). Our principles of statutory interpretation are well established. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." ***Eastman Chemical Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004). "[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by doing so." ***Lind v. Beaman Dodge***, 356 S.W.3d 889, 895 (Tenn. 2011). "When a statute is clear, we apply the plain meaning without complicating the task." ***Id***. "Our obligation is simply to enforce the written language." ***Id.***

## IV. Analysis

### A. Motion to Set Aside the Consent Order
### Dismissing the Wrongful Death Lawsuit

Ms. Harris' motion to set aside the consent order of dismissal of the wrongful death action does not specifically indicate on which of the Rule 60.02 reasons she is relying. However, given the fact that Ms. Harris waited longer than one year (i.e., from March 31, 2010, when the consent order was entered, until December 2, 2011) to file her Rule 60.02 motion, we infer that she is either relying on subsection (3), i.e., "the judgment is void," or subsection (5), i.e., "any other reason justifying relief . . . .," both of which require filing "within a reasonable time," as opposed the more stringent one year time limit for reasons 60.02(1) and (2).

In relevant part, the motion to set aside states that the wrongful death action was "commenced by the improper beneficiary in terms of priority under the Tennessee Wrongful Death Statute." We note at the outset that the Tennessee Wrongful Death Statute contains no provision concerning the "beneficiary" of the proceeds of a wrongful death action. *See **In re Estate of Dobbins***, 987 S.W.2d 30 (Tenn. Ct. App. 1998) ("There is no language in the Tennessee wrongful death statute that permits this Court to enter into considerations as to the worthiness or lack of worthiness of beneficiaries of proceeds from wrongful death lawsuits."). Accordingly, we perceive the gravamen of Ms. Harris' motion to be that Darrius, as the alleged natural child of the Decedent, had priority over Ms. Chearis to file the wrongful death action. In other words, this appeal does not involve the question of who should inherit the proceeds of the wrongful death action. Rather, the instant appeal concerns only whether the right to bring the wrongful death action vested in Ms. Chearis or Darrius. If in Ms. Chearis, the trial court did not err in denying the motion to set aside.

The Tennessee Wrongful Death Statute, Tennessee Code Annotated Section 20-5-107 provides, in pertinent part:

> (a) The [wrongful death] action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin. . . .

In Tennessee, "[t]here can be but one cause of action for the wrongful death of another." ***Kline v. Eyrich, et al.***, 69 S.W.3d 197, 207 (Tenn. 2002) (citing ***Matthews v. Mitchell***, 705 S.W.2d 657, 660 (Tenn. Ct. App. 1985)). "Because multiple actions may not be brought to resolve a single wrongful death claim, the statutes carefully prescribe the priority of those

9

who may assert the action on behalf of the decedent and any other beneficiaries." ***Id***. As discussed in more detail in 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice §5:22 (2014):

> A wrongful death action . . . must be brought in the name of statutorily designated persons. T.C.A. §20-5-107 and T.C.A. § 20-5-110 [addressing actions for the death of a spouse] read in pari materia with T.C.A. §20-5-106[2] [involving legally incompetent beneficiaries] set out the priorities among those persons entitled to bring the wrongful death action. . . .

Although the surviving spouse has first priority in filing a wrongful death action, here it is undisputed that Decedent was not married at the time of his death. "If no spouse survives, the children of the deceased person may bring an action for wrongful death." ***Id***. (citing Tenn. Code Ann. §§ 20-5-106-107; ***Busby v. Massey***, 686 S.W.2d 60 (Tenn. 1984); ***House v. Gibson***, 827 S.W.2d 310 (Tenn. Ct. App. 1991); ***Foster v. Jeffers***, 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991)); *see also* ***Williams v. Baxter***, 536 F. Supp. 13, 17 (E.D. Tenn. 1981) (interpreting Tennessee Code Annotated Section 20-5-106(a) and Tennessee Code Annotated Section 20-5-107 to give decedent's children the joint right to decedent's wrongful death action when decedent died without a surviving spouse). In the instant case, Darrius was born out of wedlock. Although an illegitimate child may maintain a wrongful death action for the death of his or her natural mother, ***Anderson v. Anderson***, 366 S.W.2d 755 (Tenn. 1963), he or she may not sue for the wrongful death of the putative father, despite the fact that the father has acknowledged the child and contributed to his or her support. ***Dilworth v. Tisdale Transfer & Storage Company, Inc.***, 354 S.W.2d 261 (Tenn. 1962). As stated by our Supreme Court in ***Dilworth***:

> This Court has held the Wrongful Death Statute must be strictly construed against the maintenance of any right of action not expressly provided therein. ***Railway Co. v. Lilly***, 90 Tenn. 563, 18 S.W. 243. ***Hogan v. McDaniel***, 204 Tenn. 235, 319 S.W.2d 221.

> Counsel for plaintiff in error argues the fact this child having been acknowledged by his putative father should affect this matter. In Tennessee there are statutory methods by which an illegitimate child may be legitimated, but there is no claim here any of these have been complied with by plaintiff in error. The mere acknowledgment by the putative father, that he is the natural father of the child would not change the legal status of the child.

10

*Id*. at 262. There are, however, certain exceptions to this rule: "(a) the parents participated in a marriage ceremony even though void; (b) before the father's death, there had been a successful paternity suit; or (c) after the father's death, paternity has been proven by clear and convincing evidence." 1 Lawrence A. Pivnick, Tennessee Circuit Court Practice §5:22 (2014) (citing Tenn. Code Ann. § 31-2-105(a)(2); *Sneed v. Henderson*, 366 S.W.2d 758 (Tenn. 1963); *Dilworth*, 354 S.W.2d 261 (Tenn. 1962); *Dotson v. Daniel Intern. Corp*., 514 F. Supp. 109 (E.D. Tenn. 1981) (citations omitted)). Exceptions (a) and (b) are not applicable in this case. Therefore, the question is whether Darrius' paternity has been established by clear and convincing evidence in this case.

As discussed above, in response to Ms. Harris' motion to set aside the settlement of the wrongful death action, on April 18, 2012, Ms. Chearis filed, in the Circuit Court, a motion requesting DNA testing to determine Darrius' paternity, along with her affidavit in support thereof. Relying on Tennessee Code Annotated Section 24-7-113, Ms. Harris countered that paternity had previously been established in the Mississippi court. Tennessee Code Annotated Section 24-7-113 provides, in relevant part:

> (b)(1) A voluntary acknowledgment of paternity which is completed under the provisions of § 68-3-203(g), § 68-3-302, or § 68-3-305(b), or under similar provisions of another state or government, when certified by the state registrar or other governmental entity maintaining the record of the acknowledgment, or the copy of the voluntary acknowledgment completed pursuant to § 68-3-302(e), shall be a basis for establishing a support order without requiring any further proceedings to establish paternity.
> (2) An acknowledgment of paternity executed as described in subdivision (b)(1) shall be entitled to full faith and credit in any judicial or administrative proceeding in this state.
> (3) No judicial or administrative proceedings are required, nor shall any such proceedings be permitted, to ratify an unchallenged acknowledgment of paternity in order to create the conclusive status of the acknowledgment of paternity.

*Id.*. By its plain language, Tennessee Code Annotated Section 24-7-113 contemplates procedure akin to a default judgment when there is no contest to the validity of a VAP, i.e., "[n]o judicial. . . proceedings are required, nor. . . permitted, to ratify an unchallenged acknowledgment." Tenn. Code Ann. §24-7-113(b)(3). However, where there is a challenge

11

to the VAP, Tennessee Code Annotated Section 24-7-113(e) requires a showing of fraud, duress, or material mistake in the execution of the VAP in order to negate the VAP as conclusive on the question of paternity.[2] Section 24-7-113(e) provides, in relevant part:

(e)(1) If the voluntary acknowledgment has not been rescinded pursuant to subsection (c), the acknowledgment may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact.

(2) The challenger must institute the proceeding upon notice to the other signatory. . . within five (5) years of the execution of the acknowledgment, and if the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests. . . . Nothing herein shall preclude the challenger from presenting any other form of evidence as a substitute for the parentage tests if it is not possible to conduct such tests.

(3) The test results certified under oath by an authorized representative of an accredited laboratory shall be filed with the court and shall be admissible on the issue of paternity pursuant to § 24-7-112(b). If the acknowledged father is found to be excluded by the tests, an action seeking support shall be dismissed or the acknowledgment of paternity shall be rescinded, as appropriate. If the test results show a statistical probability of ninety-five percent (95%) or greater, a rebuttable presumption of paternity shall be established and the issue of paternity shall be tried before the court without a jury. If the test results show a probability of paternity of ninety-nine percent (99%) or greater, the acknowledgment of paternity will become conclusive and no further action shall be necessary to establish paternity unless a motion asserting the defenses of § 24-7-112(b)(2)(C) is successfully brought.

Here, Ms. Chearis challenged the VAP and asked the court to order DNA testing. As support for her motion, Ms. Chearis filed an affidavit, in which she alleged that Decedent

---

[2] Tennessee Code Annotated Sections 24-7-113(c) and (d) describe those situations under which the named father may rescind the VAP. Here, of course, Decedent did not rescind the VAP prior to his death. Accordingly, the only means of challenging the VAP is through Tennessee Code Annotated Section 24-7-113(e). This code section does not limit the parties who may lodge a challenge to the VAP. Rather, it states broadly that "[t]he challenger" must institute the proceeding. . . . " Tenn. Code Ann. §24-7-113(e)(2). Accordingly, we cannot limit the statute to preclude Ms. Chearis' standing to file a challenge to the VAP.

was incarcerated at the time the child was conceived. Ms. Harris provided no countervailing evidence, nor did she specifically challenge Ms. Chearis' assertion in the record. Because Ms. Chearis lodged a challenge to the validity of the VAP, the trial court was required to make some finding as to whether there was a "substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity." Tenn. Code Ann. §24-7-113(e)(2); Tenn. R. Civ. P. 52.01. If, after considering the evidence, the court finds that there is a substantial likelihood of fraud, duress, or material mistake, then, under Section 24-7-113(e)(2), the court should order DNA testing and follow the procedure set out in Section 24-7-113(e)(3) depending on the results of that testing. If, however, the court finds that there is not a substantial likelihood of fraud, duress, or material mistake, then, it should dismiss the challenge to the VAP and give the VAP full faith and credit pursuant to Section 24-7-113(b)(2).

Here, the Circuit Court did not comply with Tennessee Code Annotated Section 24-7-113(e) in that it failed to make any findings concerning fraud, duress, or mistake in the execution of the VAP. Although its September 25, 2012 order states that its "position is that the parties should agree to DNA testing as it is the Court's opinion that a DNA test would conclusively settle and determine the rightful heirs and the priority of heirs . . .," the Circuit Court omitted the necessary step of first making a finding that there was a substantial likelihood of fraud, duress, or mistake in order to warrant DNA testing under Tennessee Code Annotated Section 24-7-113(e)(2). Instead, the Circuit Court stayed further proceedings and transferred the question of paternity to the Probate Court, i.e., "this matter shall be transferred to the Probate Court of Shelby County . . . for determination and priority of heirs in the intestate estate of Derrick Hussey."

First, we reiterate that the question before the Circuit Court was not one "priority of heirs" or the proper beneficiaries of Decedent's estate; rather, the sole question was whether Darrius or Ms. Chearis had the right to bring the wrongful death lawsuit. This was a question that should have been answered by the Circuit Court through the proper adjudication of Darrius' paternity under the procedures outlined in Tennessee Code Annotated Section 24-7-113.

Because Ms. Chearis raised a challenge to the VAP in the Circuit Court, the Circuit Court should not have stayed its proceedings but should have held a hearing on the question of whether fraud, duress, or material mistake existed regarding the execution of the VAP. Tenn. Code Ann. §24-7-113(e)(2). Based upon this hearing, the court should then have made specific findings concerning the substantial likelihood of fraud, duress, or mistake. *Id.* That being said, regardless of whether the Circuit Court should have transferred the question of paternity, in light of the pending challenge to paternity, the Probate Court, like the Circuit Court, could not rely on the mere filing of the VAP to establish paternity without first

13

complying with the requirements of Tennessee Code Annotated Section 24-7-113(e). The Probate Court, like the Circuit Court, did not make any findings concerning the substantial likelihood of fraud, duress, or mistake. In fact, in enforcing the VAP, the Probate Court did not rely on the VAP statute, Tennessee Code Annotated Section 24-7-113. Rather, the Probate Court relied on the Uniform Enforcement of Foreign Judgments Act ("UEFJA") to enroll the Mississippi VAP. The UEFJA, at Tennessee Code Annotated Sections 26-6-104, provides, in relevant part, that:

> (a) A copy of any foreign judgment authenticated in accordance with the acts of congress or the statutes of this state may be filed in the office of the clerk of **any circuit or chancery court of this state**.

> (b) The clerk shall treat the foreign judgment in the same manner as a judgment of a court of record of this state.

> (c) A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner.

*Id.* (Emphasis added). We first reiterate the well-established rule of statutory construction that we must assume that every word in the statute has meaning and purpose. *Lind*, 356 S.W.3d at 895. Furthermore, in analyzing legislative intent, we employ the canon of construction *expressio unius est exclusio alterius*, "which holds that the expression of one thing implies the exclusion of others...." *Rich v. Tenn. Bd. of Medical Examiners*, 350 S.W.3d 919, 927 (Tenn.2011). In Tennessee Code Annotated Section 26-6-104, the Legislature specifically states that the circuit and chancery courts have authority to enroll a foreign judgment. Under the canon of *expressio unius est exclusio alterius*, we must assume the Legislature intended to exclude courts other than chancery and circuit from enrolling foreign judgments. *See Studsvik Logistics, LLC v. Royal Furniture Co.*, No. W2009-00925-COA-R3-CV, 2010 WL 1565522 (Tenn. Ct. App. April 20, 2010) (holding that the general sessions court lacked jurisdiction to enroll a Mississippi judgment pursuant to the Uniform Enforcement of Foreign Judgment Act). The transcript of the March 27, 2013 proceedings before the Probate Court indicates that the Probate Court was aware of the fact that Tennessee Code Annotated Section 26-6-104 did not include the Probate Court when it stated that, "[i]nterestingly, the Code does not list Probate Court as a forum in which to file a foreign judgment, albeit, probate is a court of record." Despite its acknowledgment of the plain language of the statute, the Probate Court, nonetheless, enrolled the VAP. The Probate

14

Court had no authority, under the UEFJA, to enroll the Mississippi VAP. Therefore, we conclude that the Probate Court's enrolling the VAP had no legal effect regarding Darrius' paternity for purposes of the Tennessee Wrongful Death Statute.

Because the challenge to the VAP was raised in the Circuit Court, it was incumbent upon the Circuit Court to comply with the mandates of Tennessee Code Annotated Section 24-7-113 and to establish paternity under the procedure set out in that statute. Transferring the case to the Probate Court merely added a procedural wrinkle that not only complicated the case, but also had no effect on the ultimate question of Darrius' paternity. Accordingly, we hold that the Circuit Court erred in its September 25, 2012 order both by staying its proceedings and by transferring the paternity issue to the Probate Court. Accordingly, we reverse the September 25, 2012 order *in toto*.

Here, Ms. Chearis filed the wrongful death lawsuit one day before the statute of limitations expired. We note that the statutorily designated person bringing the wrongful death action sues on behalf of all persons who are entitled to share in the recovery, *see, e.g., Spicer v. Hilliard*, 879 S.W.2d 858 (Tenn. Ct. App. 1994) (citing Tenn. Code Ann. §§20-5-106(a) and 20-5-110(b)). Once the priority or right to assert the wrongful death claim is established and the lawsuit is filed, the party with the statutory authority maintains "complete control over the right of action until he or she waives that right." *Estate of Baker ex rel. v. Maples*, 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999) (citations omitted). The questions of whether the wrongful death settlement reached by Ms. Chearis should be set aside and whether Darrius should be substituted as the proper plaintiff in that action were the subject of the Rule 60.02 motion. However, in the absence of a determination of paternity under Tennessee Code Annotated Section 24-7-113, the trial court could not properly determine Darrius' standing, if any, in the wrongful death action. Accordingly, whether Darrius had standing to contest Ms. Chearis' settlement of the wrongful death lawsuit was not ripe for adjudication at the time the trial court ruled on the Rule 60.02 motion. For this reason, we vacate the trial court's order denying Rule 60.02 relief and remand the case for further proceedings, including, but not limited to, compliance with the procedure outlined in Tennessee Code Annotated Section 24-7-113 and specific findings pursuant to Tennessee Rule of Civil Procedure 52.01. In the event that the trial court concludes that Darrius has standing to contest Ms. Chearis' settlement of the wrongful death lawsuit and proceeds to consider the propriety of the Rule 60.02 motion, we also suggest that the trial court set forth its reasons for granting or denying Rule 60.02 relief so as to facilitate possible future appellate review.

15

## V. Attorney's Fees

Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 194 (Tenn.2000); accord ***Taylor v. Fezell***, 158 S.W.3d 352, 359 (Tenn.2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." ***Cracker Barrel Old Country Store, Inc. v. Epperson***, 284 S.W.3d 303, 308 (Tenn.2009) (citing ***Taylor***, 158 S.W.3d at 359; John ***Kohl & Co. v. Dearborn & Ewing***, 977 S.W.2d 528, 534 (Tenn.1998)). "[A]s a general principle, the American [R]ule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case." ***House v. Estate of Edmondson***, 245 S.W.3d 372, 377 (Tenn. 2008). However, "[w]here attorney fees are authorized by law, then the decision to award such fees is within the sound discretion of the trial court, and will not be reversed on appeal, absent abuse of that discretion." ***Martin v. Moore***, 109 S.W.3d 305, 313–14 (Tenn.Ct.App.2003) (citing ***Garfinkel v. Garfinkel***, 945 S.W.2d 744 (Tenn.Ct.App.1996)). A trial court abuses its discretion only when it applies an incorrect legal standard or when it reaches a decision against logic or reasoning that causes an injustice to the complaining party. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001).

We note that the trial court's May 30, 2014 orders granting attorney's fees to the Estate of Mae L. Chearis and Family Dollar contain no authority supporting the award of attorney's fees in this case. Rather, both orders state only that "the Plaintiff's Motion for Attorney Fees is well taken and the same should be and is hereby GRANTED." Although the trial court's orders are insufficient in this regard, we glean from the motions for attorney's fees that the fees were awarded because Ms. Harris allegedly violated the stay of proceedings set out in the Circuit Court's September 25, 2012 order, *supra*. We previously held that the trial court erred in staying its proceedings pending determination of paternity in the Probate Court and in transferring that determination to the Probate Court, which had no authority to enroll the VAP. Based upon our holding that the Circuit Court proceedings were improperly stayed, and given the lack of any other reason or authority supporting the award of attorney's fees in this case, we reverse the May 30, 2014 orders granting attorney's fees to Family Dollar and the Estate of Mae L. Chearis.

Family Dollar and Ms. Harris also ask this Court to award their respective appellate attorney's fees. An award of appellate attorney's fees is a matter within this Court's sound discretion. ***Moran v. Wilensky***, 339 S.W.3d 651, 666 (Tenn.Ct.App.2010) (citing ***Archer v. Archer***, 907 S.W.2d 412, 419 (Tenn.Ct.App.1995)). "In considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, the requesting

party's success on appeal, whether the appeal was taken in good faith, and any other equitable factors relevant in a given case." *Id.* (citing **Darvarmanesh v. Gharacholou**, No. M2004–00262–COA–R3–CV, 2005 WL 1684050, at \*16 (Tenn. Ct. App. July 19, 2005)). In the instant case, we exercise our discretion under the foregoing authority and decline both requests for attorney's fees.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's September 25, 2012 order, staying proceedings and transferring the question of paternity to the Probate Court. We also reverse the trial court's May 30, 2014 orders, granting attorney's fees to Family Dollar and the Estate of Mae L. Chearis. We vacate the trial court's May 30, 2014 order, denying Appellant's Rule 60.02 motion to set aside the wrongful death settlement and to substitute Darrius as the proper party to that lawsuit. The case is remanded to the Circuit Court for such further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, compliance with the procedures outlined in Tennessee Code Annotated Section 24-7-113 and proper findings as required by Tennessee Rule of Civil Procedure 52.01. Costs of the appeal are assessed one half to Appellant, Sharondra E. Harris and her surety, one-quarter to Appellee, Family Dollar Stores of Tennessee, Inc, and one-quarter to Appellee, Estate of Mae L. Chearis, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

17